## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. <u>04-60001-CR-HURLEY (s)</u>
18 U.S.C. § 922(g)(5)(B)
18 U.S.C. § 1001(a)
18 U.S.C. § 1621(1)
18 U.S.C. § 1505
18 U.S.C. § 924(d)(1)
21 U.S.C. § 853

UNITED STATES OF AMERICA

vs.

ADHAM AMIN HASSOUN,
   a/k/a "Abu Sayyaf,"

               Defendant.

_____/



## SUPERSEDING INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At times material to this indictment:

1.   On June 12, 2002, the Immigration and Naturalization Service, later restructured as part of the Department of Homeland Security (hereinafter "DHS"), initiated immigration removal proceedings against **ADHAM AMIN HASSOUN, a/k/a "Abu Sayyaf,"** a Palestinian national living in the United States.  In doing so, the DHS charged **HASSOUN** with failing to comply with the conditions upon which he was admitted into the country.  On that same date, Special Agents with the DHS and the Federal Bureau of Investigation (hereinafter "FBI") questioned **HASSOUN** about his activities while in the United States.



2.     On June 18, 2002, **HASSOUN** filed a motion with the Immigration Court regarding

his custody status.  On July 22, 2002, and August 1, 2002, the Immigration Court conducted hearings

on **HASSOUN's** custody status during which it considered, among other things, an FBI affidavit and

**HASSOUN's** own sworn testimony.  At that hearing, **HASSOUN** was questioned about the facts

set forth in the FBI affidavit.

## COUNT 1

On or about June 12, 2002, in Broward County, in the Southern District of Florida, the

defendant,

### ADHAM AMIN HASSOUN,
### a/k/a "Abu Sayyaf,"

being an alien admitted to the United States under a nonimmigrant visa, did knowingly possess a

firearm, in and affecting interstate commerce, that is, a Smith & Wesson 9 millimeter pistol, in

violation of Title 18, United States Code, Section 922(g)(5)(B).

## COUNT 2

On or about June 12, 2002, in Broward County, in the Southern District of Florida, the

defendant,

### ADHAM AMIN HASSOUN,
### a/k/a "Abu Sayyaf,"

in a matter within the jurisdiction of the executive branch of the Government of the United States,

that is, the DHS and the FBI, did knowingly and willfully make a materially false, fraudulent, and

fictitious statement and representation, in that **HASSOUN** stated to a Special Agent of the DHS and

to a Special Agent of the FBI that:

(1) he neither encouraged nor assisted an individual named Mohamed Youssef regarding

2

travel to any foreign country, when in truth and in fact, and as the defendant then and there well knew, he encouraged Youssef to travel to Somalia and Ethiopia, and provided funds for Youssef to travel to Kosovo for the purpose of fighting in a jihad; and

(2) he was not aware of Mohamed Youssef visiting any foreign country other than Egypt, when in truth and in fact, and as the defendant then and there well knew, Mohamed Youssef had traveled to Kosovo, and had actually entered that country under heavy bombing by Serbian forces, for the purpose of fighting in a jihad.

All in violation of Title 18, United States Code, Section 1001(a).

## COUNT 3

On or about July 22, 2002, in Miami-Dade County, in the Southern District of Florida, the defendant,

### ADHAM AMIN HASSOUN,
### a/k/a "Abu Sayyaf,"

having taken an oath before a competent tribunal, officer, and person, that is, an Immigration Judge, in a case in which a law of the United States authorizes an oath to be administered, that is, an Immigration Court proceeding, that he will testify, declare, depose, and certify truly, did knowingly, willfully, and contrary to such oath, state and subscribe material matters which he did not believe to be true, concerning his recruitment of Mohamed Youssef to fight in a jihad and discussions about jihad over the telephone with Mohamed Youssef, as herein set forth below:

Q. And was he one of your recruits as has been said in the affidavit?

A. I never recruited him.

Q. And how, what's your phone contact with Mr. Youssef?

3

A. At that time after he left to Egypt?

Q. Yes.

A. When he left to Egypt he kept in touch, and he used to call to ask about how the community doing over here, and how the family is doing, and that was it.

The aforementioned testimony by **HASSOUN** as he then and there believed, was a false material statement, in that **HASSOUN** did recruit Mohamed Youssef to fight in a jihad and did discuss jihad over the telephone with Mohamed Youssef.

All in violation of Title 18, United States Code, Section 1621(1).

### COUNT 4

On or about July 22, 2002, in Miami-Dade County, in the Southern District of Florida, the defendant,

**ADHAM AMIN HASSOUN,**
**a/k/a "Abu Sayyaf,"**

having taken an oath before a competent tribunal, officer, and person, that is, an Immigration Judge, in a case in which a law of the United States authorizes an oath to be administered, that is, an Immigration Court proceeding, that he will testify, declare, depose, and certify truly, did knowingly, willfully, and contrary to such oath, state and subscribe material matters which he did not believe to be true, concerning his purpose for providing financial assistance to Mohamed Youssef, as herein set forth below:

Q. And did you ever provide anything, any monetary financial assistance to him?

A. At one point he wanted money to prepare a land that he has, this is what he said. And that land I believe is close to the Suez canal, somewhere like that. And he asked if the

4

community could help him to fix the land, and the community responded and we helped him.

Q. Okay. Was there any other purpose other than the land that he owned there?

A. This is what he asked and this is what we responded.

* * * *

Q. Right. And you said the money was for what?

A. To fix his land, fix his house, something like that.

The aforementioned testimony by **HASSOUN**, as he then and there believed, was a false

material statement, in that **HASSOUN** did provide financial assistance to Mohamed Youssef for the

purpose of fighting in a jihad.

All in violation of Title 18, United States Code, Section 1621(1).

## COUNT 5

On or about July 22, 2002, in Miami-Dade County, in the Southern District of Florida, the

defendant,

### ADHAM AMIN HASSOUN,
### a/k/a "Abu Sayyaf,"

having taken an oath before a competent tribunal, officer, and person, that is, an Immigration Judge,

in a case in which a law of the United States authorizes an oath to be administered, that is, an

Immigration Court proceeding, that he will testify, declare, depose, and certify truly, did knowingly,

willfully, and contrary to such oath, state and subscribe material matters which he did not believe

to be true, concerning his use of coded language with other individuals, including Mohamed

Youssef, when discussing jihad activities, as herein set forth below:

Q. Did you speak with him in coded language?

5

A. Never.

Q. Do you have any coded languages with any –

A. No, I don't.

* * * *

Q. And in 1998 it's alleged that you had a conversation, you talk about you have a soccer equipment. Did you recall any conversation like that?

A. No. I know he wanted, he wanted to open a business, you know, and he wants to get something from here, buying equipment and stuff like that.

Q. Do you recall what equipment he was talking about?

A. Soccer maybe, or football, something like that. But I asked him to come over here and pick up whatever he wants.

* * * *

Q. Sir, in your, you talked about this in direct examination, but in your, one of your telephone conversations in 1998 with Mr. Youssef you discussed soccer equipment?

A. He discussed it, yes.

Q. Okay. Well –

A. Yes. Go ahead.

Q. You discussed it with him?

A. Mm-mm.

Q. Right. And your assertion is that he was directly speaking just of soccer equipment?

A. Yes. He gave me the impression that he was talking business, and he wanted to do some trade. In my, you want to hear my [inaudible]?

6

Q. No. Sir, isn't it true that during that conversation you also asked, even though you were speaking about soccer equipment, you asked him if he had enough to launch an attack on the enemy?

A. What enemy?

Q. Did you say those words or something close to those words?

A. Not that I recall.

Q. Do you recall discussing with him an attack?

A. Where was he, in Egypt?

Q. Yes.

A. What enemy?

Q. Well I'm asking you, sir.

A. No.

Q. Did you discuss with him having enough equipment to engage an enemy?

A. I don't recall that.

Q. But you may have?

A. I don't recall that.

Q. Well –

A. I'm trying to put you where you're going. If I may –

Q. Well it's a very specific question, sir.

A. Go ahead.

Q. The question is in your conversation in 1998 with Mr. Youssef in which you discuss soccer equipment, did you or did you not talk to him about having enough equipment to

engage an enemy?

A. No.

Q. You did not?

A. [No audible response]

Q. Did you discuss with him anti-armor tools?

A. I don't recall.

Q. Okay. But you might have?

A. What is that again?

Q. Anti-armor tools. Did you discuss tools with him?

A. I don't recall what we spoke. I know that we spoke that he wants to trade, and he wants

a soccer theme and stuff like that. Other than that, I don't recall. I know that part.

The aforementioned testimony by **HASSOUN**, as he then and there believed, was a false

material statement, in that **HASSOUN** did speak in coded language with other individuals, including

Mohamed Youssef, when discussing jihad activities.

All in violation of Title 18, United States Code, Section 1621(1).

## COUNT 6

On or about July 22, 2002, in Miami-Dade County, in the Southern District of Florida, the

defendant,

### ADHAM AMIN HASSOUN,
a/k/a "Abu Sayyaf,"

having taken an oath before a competent tribunal, officer, and person, that is, an Immigration Judge,

in a case in which a law of the United States authorizes an oath to be administered, that is, an

8

Immigration Court proceeding, that he will testify, declare, depose, and certify truly, did knowingly, willfully, and contrary to such oath, state and subscribe material matters which he did not believe to be true, concerning his conversations with Mohamed Youssef about the experience of fighting in a jihad conflict, as herein set forth below:

Q. Sir, have you ever discussed with Youssef, in any phone call, his experiences on the front lines?

A. What front lines?

Q. Front lines of any battle.

A. What battle?

Q. Any battle. Any armed conflict.

A. He never spoke to me about any armed conflict.

Q. So you've never discussed him, with him his activities on the front lines in any armed struggle or conflict?

A. I don't recall any of that happening.

Q. But it could have?

A. Not really. No.

The aforementioned testimony by **HASSOUN**, as he then and there believed, was a false material statement, in that **HASSOUN** did participate in conversations with Mohamed Youssef about the experience of fighting in a jihad conflict.

All in violation of Title 18, United States Code, Section 1621(1).

## COUNT 7

Beginning on or about July 22, 2002, and continuing until on or about August 1, 2002, in Miami-Dade County, in the Southern District of Florida, the defendant,

**ADHAM AMIN HASSOUN,**
**a/k/a "Abu Sayyaf,"**

having taken an oath before a competent tribunal, officer, and person, that is, an Immigration Judge, in a case in which a law of the United States authorizes an oath to be administered, that is, an Immigration Court proceeding, that he will testify, declare, depose, and certify truly, did knowingly, willfully, and contrary to such oath, state and subscribe material matters which he did not believe to be true, concerning his participation in conversations about killing a woman in Lebanon, as herein set forth below:

Q. Now you have read the allegations in the affidavit provided by the Government, written by Officer Arena?

A. Yes, I did.

Q. FBI Agent. I'm going to direct your attention to that affidavit. First, we're going to go to paragraph 17, where it has the allegation that sometime in August 1997. You had a conversation with someone identified as an associate concerning a female, the way I understood, was stuck in Lebanon, and the government in cooperation with CIA and State Department was trying to bring her here. And you made some comments. Do you recall any of those comments?

A. No.

Q. Do you recall any female stuck in Lebanon?

10

A. No, I don't.

Q. In 1997?

A. No.

Q. Do you recall your ordering the assassination of that female?

A. No, I don't.

Q. I remind you, you are under oath.

A. I am under oath.

Q. And I want you to, five, six, years ago which incident has been explained here. And do you recall saying that I have to speak to the brothers in Lebanon to take care of her.

A. Never.

Q. Do you recall any conversation?

A. No, I don't. Never happened.

Q. Do you recall any of this which is said in paragraph 17, if it ever happened?

A. Never happened. I read it many times through the weekend, through the whole week since I had this. None of that happened.

* * * *

Q. And sir do you still claim that at no time you had a conversation about a female who had traveled from the United States to the middle east, that conversation discussing the issue of having her killed?

A. Do I what?

Q. Did you ever have a conversation with somebody about killing a woman?

A. No, no, never.

11

\* \* \* \*

Q. Hassoun, you know that there's a, someone named associated mentioned in, in paragraph 17 of Agent Arena's declaration.  Do you know who that person is?

A.  No.

Q. Have you ever spoken to anyone who can say I overheard you saying that you want to kill someone, plot to kill someone?

A.  No.

Q. Did you ever have in your mind ill will against anyone?

A.  Never.

Q. Do you know this female mentioned in paragraph 17?

A.  No.  I have no idea.

Q. So it's an absolute denial?

A.  Absolute denial.

Q. You're under oath.

A.  I am under oath.

The aforementioned testimony by **HASSOUN**, as he then and there believed, was a false material statement, in that **HASSOUN** did participate in conversations about killing a woman in Lebanon.

All in violation of Title 18, United States Code, Section 1621(1).

## COUNT 8

Beginning on or about June 12, 2002, and continuing until on or about September 30, 2002, in Broward and Miami-Dade Counties, in the Southern District of Florida, the defendant,

**ADHAM AMIN HASSOUN,**
**a/k/a "Abu Sayyaf,"**

did knowingly and willfully corruptly endeavor to influence, obstruct, and impede the due and proper administration of law under which a pending proceeding, that is, an Immigration Court proceeding, was being had before a department and agency of the United States, in violation of Title 18, United States Code, Section 1505.

## FORFEITURE

1.      The allegations in Count 1 of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America of property in which the defendant has an interest, pursuant to the provisions of Title 18, United States Code, Section 924(d)(1), as incorporated by Title 28, United States Code, Section 2461(c), and the procedures outlined in Title 21, United States Code, Section 853.

2.      Upon the conviction of any knowing violation of Title 18, United States Code, Section 922(g)(5)(B), the defendant shall forfeit to the United States any firearm involved in or used in the commission of said violation.

3.      The property subject to forfeiture includes, but is not limited to, a Smith & Wesson

9 millimeter pistol seized from the defendant on June 12, 2002.

All pursuant to Title 18, United States Code, Section 924(d)(1), as incorporated by Title 28,

United States Code, Section 2461(c), and the procedures outlined in Title 21, United States Code,

Section 853.

A TRUE BILL

_____
FOREPERSON

_____
MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

_____
RUSSELL R. KILLINGER
ASSISTANT UNITED STATES ATTORNEY

_____
BRIAN K. FRAZIER
ASSISTANT UNITED STATES ATTORNEY

_____
STEPHANIE K. PELL, TRIAL ATTORNEY
COUNTERTERRORISM SECTION
UNITED STATES DEPARTMENT OF JUSTICE

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA**

**CASE NO.   04-60001-CR-Hurley (s)**

**vs.**

**CERTIFICATE OF TRIAL ATTORNEY\***

**ADHAM AMIN HASSOUN,**
a/k/a "Abu Sayyaf,"

_____
                Defendant.
                                        /

**Superseding Case Information**:

**Court Division:** (Select One)

New Defendant(s)          Yes _____   No _X_
Number of New Defendants          0
Total number of counts            8

_____ Miami    _____ Key West
_____ FTL   _X_ WPB _____ FTP

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:   (Yes or No)      Yes

     List language and/or dialect      Arabic

4.   This case will take   12   days for the parties to try.

5.   Please check appropriate category and type of offense listed below:
     (Check only one)                          (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _X_ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | _X_ |
| V | 61 days and over | _____ | | |

6.   Has this case been previously filed in this District Court?  (Yes or No)     Yes
If yes:
Judge: _____Hurley_____          Case No.   04-60001-CR-Hurley
(Attach copy of dispositive order)
Has a complaint been filed in this matter?   (Yes or No) _____
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of   January 12, 2004
Defendant(s) in state custody as of _____
Rule 20 from the _____      District of _____

Is this a potential death penalty case? (Yes or No)    No

7.   Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003?    _X_ Yes _____ No

8.   Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? ___ Yes _X_ No
     If yes, was it pending in the Central Region? ___ Yes ___ No

9.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes _X_ No

10.  Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003 ? _____ Yes _X_ No

_____
RUSSELL R. KILLINGER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.  312851

Penalty Sheet(s) attached

REV.1/14/04

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT:   **ADHAM AMIN HASSOUN, a/k/a "Abu Sayyaf"**

**PRETRIAL DETENTION**
(Surety) (Recognizance) (Corp. Surety) (Cash) (Jail)
(CSB) (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
**RUSSELL R. KILLINGER**
**ASSISTANT UNITED STATES ATTORNEY**

Last Known Address:   33 NE 4th Street

Miami, Florida

What Facility:   FDC Miami

Agent(s):   **FBI   S/A JOHN KAVANAUGH**
(FBI)   (SECRET SERVICE)   (DEA)   (IRS) (CUSTOMS)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: ADHAM AMIN HASSOUN, a/k/a "Abu Sayyaf"

**Case No**:   04-60001-CR-Hurley (s)

Count(s) #:   1

Unlawful Possession of a Firearm

18 U.S.C. § 922(g)(5)(B)

**\* Max. Penalty**:   Ten   (10 ) years' imprisonment

Count(s) #:   2

Making a False Statement

18 U.S.C. § 1001(a)

**\* Max. Penalty**:   Five   (5) years' imprisonment

Count(s) #:   3, 4, 5, 6 and 7

Perjury

18 U.S.C. § 1621(l)

**\* Max. Penalty**:   Five   (5) years' imprisonment

Count(s) #:   8

Obstruction of Justice

18 U.S.C. § 1505

**\* Max. Penalty**:   Five ( 5) years' imprisonment