UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60001-cr-COOK/McAliley(s)(s)(s)

UNITED STATES OF AMERICA,  :

    Plaintiff,  :

    v.  :

ADHAM AMIN HASSOUN,  :

    Defendant.  :

_____  :

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO REVOKE PROTECTIVE ORDER**

The Defendant, **ADHAM AMIN HASSOUN**, through undersigned counsel, respectfully replies to the Government's Response to Defendant's motion to revoke the Protective Order and in support thereof says as follows:

I.

**The Protective Order Interferes with the Defendant's Right to Prepare a Defense**.

The Government argues that the Protective Order strikes a reasonable balance between the Government's interest and the Defendant's ability to prepare for trial. The Government claims that the order prohibits disclosure of the recorded conversations to any persons who are not part of the "defense team." In the Government's view, persons who fall outside the defense team include "unindicted co-conspirators, media outlets (domestic

1

and foreign), and the public at large." (Government Response, pg. 2)

The conspiracy count charging the Defendant with conspiracy to provide material support for terrorists contains 75 overt acts.[1]  According to the overt acts, the four unindicted co-conspirators are either participants in various FISA conversations or they are mentioned in conversations.  If these persons are willing to speak with the Defendant, then the Defendant must be able to freely discuss the facts of the case, including the substance of any relevant FISA conversations.  By prohibiting any dissemination of these recordings to unindicted co-conspirators, the order restricts the Defendant's ability to effectively communicate with these material witnesses.  Any interference by the Government to the Defendant's access to any witness is a violation of due process. *United States v. Pepe*, 747 F.2d 632 (11th 1984).  Restricting the Defendant's ability to communicate with material witnesses, even if the witnesses are not necessarily potential defense witnesses, is a violation of the Defendant's due process right to prepare for trial.

For example, overt act no. 32 alleges that the defendant had a conversation with an unindicted co-conspirator about fund raising for "violent jihad" activity in Ogaden, Ethiopia. In order to discuss this overt act, the Defendant must discuss the contents of this conversation with the witness. Similarly, overt act no. 33 is a conversation with a different unindicted co-conspirator which the Government interprets to be about supporting terrorist activities.  The Defendant will need to discuss the contents of this conversation with this unindicted co-conspirator but cannot do so under this protective order.

The Defendant will need to confer with the unindicted co-conspirators about the

---

[1] The conspiracy count charges a violation of 18 U.S.C. ¶371 and 2339A(a)

2

substance of many FISA conversations, most of which are not described in the overt acts. The Defendant may need to speak to other persons that are not necessarily potential defense witnesses, but who may have important information about matters discussed in the tapes. The Defendant's need to collect information about the case includes obtaining any information from potential Government witnesses. The Defendant cannot always know whether a potential witness will be favorable or not. Due process must allow the Defendant to confer with anyone that counsel believes is necessary for the preparation of his case.

As for the Government's claim of national security protection, there is no allegation in any overt act indicating an obvious "ongoing investigation" that would effect national security of this country or any country. The Government's reply sheds no light on this claim. It has not identified any portion of the indictment involving a current investigation involving this country or any country. The Government has not shown how or in what manner the dissemination of any portion of these hundreds of tape recordings would negatively effect the security interest of any country.

II.

**A Delay in the Disclosure of *Brady/Giglio* Information Is Not Warranted.**

The government claims that delayed disclosure of *Brady/Giglio* material is warranted because of a safety concern for the Government's prospective witnesses. In support, the Government points to a conversation between the Defendant and another person in which there is a brief comment regarding a person who the Defendant heard had traveled to Lebanon. This was nothing more than an off-hand comment that cannot possibly be

3

viewed as a threat to harm this person, when viewed in the full context of the conversation. Nevertheless, the Government has made a baseless and unjustified accusation that the Defendant threatened to have a U.S. citizen killed.[2]

The full content and context of the conversation reveals that the conversation was not about anyone intending to harm this person or any person. The Defendant did not threaten to harm the person and was clearly not talking about having anyone else harm the person. There was no discussion about harming this person, and the Government completely misinterprets this comment.

The translation given in the Government's Response is not the exact same as the actual translation prepared by the Government. The Response has the following translation: "The first person who sees her needs to made her disappear, and that's it, no one mentions the subject." The translation provided by the Government gives the following: "By God, you tell the first one who finds her, to make her disappear, and that's it, and they won't mention the subject." The Government's version in its Response makes the statement appear to be a direct command or a request that the person "disappear." The translation shows this was not a direct request made to the other participant in the conversation or to any third party.

The word "disappear" cannot be interpreted to mean a threat to harm or to hurt this person when viewed in the full context of this conversation. Though the word disappear is a literal translation, the word did not imply to kill or harm as it was used in this conversation. The Government's literal translation of this comment is not an accurate depiction of what

---

[2] The Government has not stated whether this person will be a witness at trial.

was meant or intended.  In fact, the participant in the conversation did not interpret this to be about harming the individual.  The Government tape recorded all of the Defendant's telephone conversations before and after, yet there was no other conversation indicating that he or anyone else took any steps to harm or to threaten this person.  It was simply an isolated comment that did not show any intent to harm.

The Government's response accuses the Defendant of being part of a "network of Islamic extremists and violent individuals" but never outlines or substantiates any connection or ties between the Defendant and any violent or extremist group.  The Defendant is a member of the Islamic faith but calling him an Islamic extremist is intended to cause bias against him with this Court because of the explosive nature of these terms.  There area some 700 or so conversations that the Government tape recorded, but none show the Defendant intended any harm to anyone.  The Government has not shown any reason for withholding *Brady* or *Giglio* evidence for any future prospective witness.

WHEREFORE, the Defendant respectfully moves this Honorable Court for an order revoking the Protective Order.

5

Respectfully submitted,

SWARTZ & LENAMON
New World Tower, Suite 2100
100 N. Biscayne Boulevard
Miami, Florida 33132-2306
Tel:   305-579-9090
Fax: (786) 425-2340

By:_____
KENNETH M. SWARTZ
Florida Bar No. 331929

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via U.S. Mail this 28th day of March, 2005, upon Russell Killinger, Assistant United States Attorney, 99 N. E. Fourth Street, Miami Fl 33132.

_____
Kenneth M. Swartz