UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04–60001-Cr-Cooke(s)(s)(s)(s)(s)

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ADHAM AMIN HASSOUN,

    Defendant.
_____/

## DEFENDANT HASSOUN'S MOTION TO SUPPRESS ILLEGALLY OBTAINED FISA EVIDENCE AND INCORPORATED MEMORANDUM OF LAW

Defendant Adham Amin Hassoun, through undersigned counsel, moves this Court to undertake a careful review of all applications for electronic surveillance of defendant Hassoun conducted pursuant to the Foreign Intelligence Surveillance Act ("FISA"), as well as applications for such surveillance of any third-party target which intercepted defendant, and based upon that review, disclose the applications, orders to the defense, hold a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and, as result, suppress all intercepts of defendant Hassoun derived from illegally authorized FISA surveillance. As will be demonstrated in the Memorandum of Law below, the grounds for suppression of the FISA evidence against defendant Hassoun are as follows:

(A) the FISA applications for wiretaps on any of defendant Hassoun's telephone numbers, or on telephone numbers of any third-party targets on which defendant was iintercepted, may fail to establish probable cause that either defendant or the third-party target was "an agent of a foreign power";

(B) the FISA applications may contain intentional or reckless material falsehoods or omissions, and the surveillance therefore may violate the principles of *Franks v. Delaware*, 438 U.S. 154 (1978);

(C) the primary purpose of the electronic surveillance was to obtain evidence of domestic criminal activity and not foreign intelligence information; and

(D) the government may not have made the required certifications in the FISA applications, or may have failed to obtain necessary extensions to prior FISA orders.

## FACTUAL BACKGROUND

Discovery provided by the government contains a voluminous number of recordings of telephone conversations, voice mail messages and facsimile transmissions in which defendant Hassoun was intercepted on FISA wiretaps.[1] From other documents provided by the government, defendant has been able to glean the following regarding the inception of the investigation which led to these wiretaps:

The FBI investigation of defendant Hassoun and other co-defendants appears to have begun sometime in 1993 as a result of an FBI determination that in January 1993 calls were placed between a telephone number subscribed to by Sheikh Omar Abdel

---

[1] The government has given notice to defendant Hassoun, as it is obligated to do under the FISA statute, that it intends to offer into evidence information derived from electronic surveillance conducted pursuant to FISA.

2

Rahman in Jersey City, New Jersey and a telephone number subscribed to by Hassoun. (Declaration of FBI Section Chief Andrew G. Arena, dated July 12, 2002, ¶6) (Affidavit of FBI Agent Kent Hukill, dated October 16, 2002, ¶17). Rahman, a blind Islamic scholar and cleric, had been under investigation for a series of criminal incidents in the United States resulting in the arrest of Rahman and thirteen others on charges of conspiracy involving giving assistance to plots to bomb the garage of the World Trade Center on February 23, 1993, and to attempt to bomb other buildings and tunnels in New York City in Spring 1993. See United States v. Rahman, 189 F.3d 88 (2nd Cir. 1999). The calls between Rahman's and Hassoun's telephone numbers led to the FBI's interest in Hassoun. (Declaration of Arena, ¶6) (Affidavit of Hukill, ¶¶17,18). At about the same time, the FBI was investigating contacts between co-defendant's Jayoussi and Daher and Rahman. (Affidavit of FBI Agent John Kavanaugh, dated December 1, 2004,¶¶7, 9, 11).

Defendant Hassoun understands from the discovery that at some point in 1993 or 1994, the FISA Court approved electronic surveillance of a phone belonging to a third-party target which resulted in interceptions of defendant Hassoun. Defendant has reason to believe that the third-party target was either co-defendant Jayoussi or Mohamed Zaky, or both. Mohamed Zaky was a San Diego-based supporter and follower of Sheikh Rahman (Affidavit of Kavanaugh, ¶7), who, although now deceased, is named in the fifth superseding Indictment as an unindicted co-conspirator. Indictment, ¶10.

According to the government, the FISA Court did not issue an order authorizing warrant for electronic surveillance of Hassoun own phones until January 1996.[2] (Affidavit

---

[2] Defendant does not know if any earlier applications for FISA orders were made.

of Hukill, ¶18). Defendant does not know how long any of the FISA wiretaps on his phones lasted but believes they ended when he was detained in June 2002.

## MEMORANDUM OF LAW

### I.     The FISA STATUTORY SCHEME

FISA "was enacted in 1978 to establish procedures for the use of electronic surveillance in gathering foreign intelligence information....The Act was intended to strike a sound balance between the need for such surveillance and the protection of civil liberties." *In re Kevork*, 788 F.2d 566, 569 (9th Cir. 1986). Through FISA, Congress attempted to limit the propensity of the Executive Branch to engage in abusive or politically motivated surveillance. FISA was Congress's attempt to balance the "competing demands of the President's constitutional powers to gather intelligence deemed necessary to the security of the Nation, and the requirements of the Fourth Amendment." H.R. Rep. No. 95-1283, at 15.

FISA establishes procedures for surveillance of foreign intelligence targets whereby a federal officer acting through the Attorney General may obtain judicial approval for conducting electronic surveillance for foreign intelligence purposes. The FISA statute created a special court "FISA court" to which the Attorney General must apply for orders approving electronic surveillance of a foreign power, or an agent of a foreign power, for the purpose of obtaining foreign intelligence information. 50 U.S.C. §§ 1802(b), 1803, and 1804 (hereafter cited without reference to "50 U.S.C.). "With important exceptions not pertinent here, FISA requires judicial approval before the government engages in any electronic surveillance for foreign intelligence purposes." *United States v. Cavanagh*, 807

F.2d 787, 786 (9th Cir. 1987).

The statute requires that any application to the FISA court be made under oath by a federal officer and contain certain information and certifications found in §1804, in summary as follows:

• First, the application must give the identity of the federal officer making the application.

• Second, the application must state that the President of the United States has conferred upon the Attorney General the authority to make this surveillance application and the approval by the Attorney General to make this application.

• Third, the application must state the identity or description of the target.

• Fourth, the application must contain "a statement of the facts and circumstances relied upon by the applicant to justify his belief that...the target of the electronic surveillance is a foreign power or an agent of a foreign power and each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used by a foreign power or an agent of a foreign power." §1804(a)(4)(A).[3] An "agent of a foreign

---

[3]Section1801(b) defines "agent of a foreign power" as follows:
(1) any person other than a United States person, who -
    (A) acts in the United States as an officer or employee of a foreign power, or as a member of a foreign as defined in subsection (a) (4) of this section;
    (B) acts for or on behalf of a foreign power which engages in clandestine intelligence activities in the United States contrary to the interests of the United States, when the circumstances of such person's presence in the United States indicate that such person may engage in such activities in the United States, or when such person knowingly aids or abets any person in the conduct of such activities or knowingly conspires with any person to engage in such activities; or
(2) any person who -
    (A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;

power" means, as relevant here "any person other than a United States person, who...knowingly engages in...international terrorism, or activities that are in preparation therefore, for or on behalf of a foreign power," and "any person who...knowingly aids or abets any person in the conduct of activities" described above. §1801 (b)(2)(C),(E). *See United States v. Posey*, 864 F.2d 1487, 1490 (9th Cir. 1989). FISA defines the term "foreign power," as relevant here, as "a group engaged in international terrorism or activities in preparation therefore." § 1801(a)(4).[4]

---

      (B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States;
      (C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, or on behalf of a foreign power;
      (D) knowingly enters the United States under a false or fraudulent identity for or on behalf of a foreign power or, while in the United States, knowingly assumes a false or fraudulent identity for or on behalf of a foreign power; or
      (E) knowingly aids or abets any person in the conduct of activities described in subparagraph (A), (B), or (C) or knowingly conspires with any person to engage in activities described in subparagraph (A), (B), or (C).

    A "<u>United States person</u>" is defined in §1801(h)(4) as any "citizen of the United States" or "and alien lawfully admitted for permanent residence."

[4]Section 1801(c) defines "international terrorism" as follows:
(c) "International terrorism" means activities that -
(1) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or any State;
(2) appear to be intended -
(A) to intimidate or coerce a civilian population;
(B) to influence the policy of a government by intimidation or coercion; or
(C) to affect the conduct of a government by assassination or kidnaping; and
(3) occur totally outside the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to coerce or intimidate, or the locale in which their perpetrators operate or seek asylum.

6

- Fifth, the application to the FISA Court must also provide a "statement of proposed minimization procedures." *Id.* § 1804(a)(5).

- Sixth, the application must include a "detailed description of the nature of the information sought and the type of communications or activities to be subjected to surveillance." *Id.* §1504(a)(6).  The statute appears to require that the information sought and the communications to be placed under surveillance would have to directly relate to activities involving an agent of a foreign power and international terrorism as defined in the statute.

- Seventh, the applicant must set forth "certifications" by an Assistant to the President for National Security Affairs or an executive branch official designated by the President from among executive officers employed in the area of national security or defense and appointed by the President with the advice and consent of the Senate, stating as follows:

> (A) that the certifying official deems the information sought to be foreign intelligence information;
> (B) that <u>the purpose of the surveillance is to obtain foreign intelligence information</u>;[5]
> (C) that such information cannot reasonably be obtained by normal investigative techniques,

---

[5] Effective October 26, 2001,Congress amended §1804(a)(7)(B) through the USA PATRIOT Act to require certification only that "<u>a significant</u> purpose" -- rather than "<u>the</u> purpose" -- of the surveillance is to obtain foreign intelligence information.  In May, 2002, the Foreign Intelligence Surveillance Court of Review, a federal court empowered to review the denial of a FISA application by the FISA Court, issued its first ever opinion, in its 24 year history, upholding the constitutionality of the "significant" purpose standard. *In re Sealed Case*, 310 F.3d 717 (Foreign Int. Surv. Ct. Rev. 2002). While defendant Hassoun recognizes that the only decision on this point is adverse, he nevertheless intends to preserve a challenge to the constitutionality of this amendment to the extent that any post-October 26, 2001, wiretaps are introduced against him in this case.

> (D) that designates the type of foreign intelligence information being sought according to the categories describe in section 1801(e) of this title; and
> (E) including a statement of the basis for the certification that -
> (i) the information sought is the type of foreign intelligence information designated; and
> (ii) such information cannot reasonably be obtained by normal investigative techniques.

§1804(a)(7)(A)-(E) (emphasis added).

- Eighth, the application must contain a statement of facts concerning all previous applications that have been made to any judge under this statute and action taken on each previous application.

- Ninth, the application must specify the period of time for which the electronic surveillance is required to be maintained. *Id.* §§ 1804(8) (9)

The Attorney General must personally review the application and determine that it satisfies the criteria and requirements set forth in the statute. §1804 (e)

Before the FISA court can approve electronic surveillance, it must make the following findings under §1805(a):

- (1) that the President has authorized the Attorney General to approve applications for electronic surveillance for foreign intelligence information;

- (2) that the application was made by a federal officer and approved by the Attorney General;

- (3) that there is a probable cause to believe that "the target of the electronic surveillance is a foreign power or an agent of a foreign power...and... each of the facilities or places at which the electronic surveillance is directed is being used or is about to be used by a foreign power or agent of a foreign power";

- (4) that the proposed minimization procedure meets the definition of minimization procedures under section 1804(h); and

- (5) that the application contains all statements and certifications required.

In accordance with §1805(a)(5), if a target is a "United States person," the FISA court must find that the "certifications" under §1804(a)(7)(E) -- namely, that the information sought is (i) "the type of foreign intelligence information designated," and (ii) "cannot reasonably be obtained by normal investigative techniques" -- are "not clearly erroneous." Furthermore, §1805(a)(5) provides "that no United States person may be considered a foreign power solely upon the basis of activities protected by the first amendment."

FISA orders authorizing wiretaps are issued for certain specified periods of time, but can be extended pursuant to additional applications. §1895(e)(1),(2).

The FISA statute authorizes any "aggrieved person" to move to suppress evidence obtained or derived from an electronic surveillance on the grounds that "the information was unlawfully acquired" or "the surveillance was not made in conformity with an order of authorization or approval." § 1806(e)(1)(2). FISA defines the phrase "aggrieved person" as "a person who is the target of electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." §1801(k).

II    **GROUNDS FOR RELIEF**

Under FISA, defendant Hassoun is an "aggrieved person" as to the electronic surveillance that intercepted his conversations on wiretaps of any third-party targets and as to the electronic surveillance that was placed on any telephone number for which he was a subscriber. See, Cavanagh, 807 F.2d at 789 (person incidentally overhead during FISA surveillance of another target is an "aggrieved person"); United States v. Belfield, 692 F. 2d 141, 143, 146 n.21 (D.C. Cir. 1982), (same). As an aggrieved person, defendant Hassoun seeks relief on each of the grounds presented below.

> A.   **FISA applications for wiretapping any of Hassoun's telephones, or telephones of any third-party targets on which Hassoun was intercepted, may fail to establish probable cause that either Hassoun or the third-party target was "an agent of a foreign power"**

Before authorizing FISA surveillance, the FISA court must find, *inter alia*, probable cause to believe that "the target of the electronic surveillance is a foreign power or an agent of a foreign power." §1805(a)(3)(A). As set forth in footnote 3 above, the statute provides several definitions for an "agent of a foreign power," and multiple definitions for a foreign power.

The Supreme Court has recently reiterated the long-standing rule that criminal probable cause requires "a reasonable ground for belief of guilt," and "the belief of guilt must be particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) [citations omitted]. Under FISA, the probable cause standard is directed not at the target's alleged guilt of a crime, as with a traditional warrant, but at the target's alleged status as "a foreign power or an agent of a foreign power." Thus, this Court must initially determine, with respect to each application for electronic

surveillance of defendant Hassoun or of any relevant third-party target, whether the application established a reasonable, particularized ground for belief that defendant or the third-party target fell within a definition of an agent of a foreign power. §§1805(a)(3)(A), 1801(b)(2)(C),(E).

The statute includes an additional restriction for a "United States person" -- *i.e.*, a U.S. citizen or permanent resident, §1801(h)(4) -- prohibiting a finding of probable cause for such a target if based solely upon First Amendment activities. In making the probable cause determination, the statute states "that no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment...." §1805(a)(3). Accordingly, if the target participated in First Amendment activities such as expressing support, urging others to express support, gathering information, distributing information, raising money for political causes, or donating money for political causes, these activities <u>cannot</u> serve as a basis for probable cause.

Defendant Hassoun has reason to believe that he was intercepted on FISA wiretaps of one or more third-party targets prior to the FISA wiretaps placed on one or more of his own phones. Therefore, the Court's probable cause determination must focus on FISA applications for wiretapping the relevant third-party targets, as well as applications for wiretapping defendant Hassoun directly, taking special care to ensure that First amendment protections are accorded all "United States persons."

Defendant Hassoun cannot address any details of any of the FISA applications in this case because he and his counsel have not seen those applications. Indeed, the government has advised defendant Hassoun that it intends to file an affidavit pursuant to

11

§1806(f), refusing disclosure of those applications.[6] Under §1806(f), when an aggrieved person files a motion to suppress FISA wiretaps and "the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States," the court may review the FISA wiretap applications and related materials *in camera* and *ex parte,* to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted. However, the statute <u>does</u> contemplate disclosure of these materials under certain circumstances. The Court <u>may</u> "disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where <u>such disclosure is necessary</u> to make an accurate determination of the legality of the surveillance." *Id.* (emphasis added).

Without having an opportunity to review the applications for any of the wiretaps at issue, defendant Hassoun can only speculate as to whether the allegations asserting that he, or any relevant third-party target, was an "agent of a foreign power" were sufficient under the statute. Defendant Hassoun believes that the definition of "agent of a foreign power" used in this case was that found in §1801(b)(2)(C): -- "any person...who <u>knowingly</u> engages in sabotage or international terrorism, or activities that are in preparation therefore, for or on behalf of a foreign power" (emphasis added). If this provision was, in fact, the basis for the applications, there must be probable cause showing that defendant or the relevant third-party target <u>knowingly</u> engaged in some type of international terrorism

---

[6]By letter dated November 7, 2005, the government advised counsel that the Attorney General will file such an affidavit in response to a defense request to produce the FISA applications. Simultaneously with this Motion, defendant Hassoun is filing a separate motion to produce all relevant FISA applications, materials and orders.

-- that is, that defendant or the relevant third-party target <u>knew</u> that his activities were assisting international terrorism.

Production of the applications is necessary to allow defendant Hassoun an opportunity to show that the requisite probable cause with respect to the issue of <u>knowledge</u> was lacking, and that with respect to any third-party target who was a "United States person," the alleged "activities" fell within the protection of the First Amendment and, thus, could not be used as a basis for probable cause in any event. Disclosure would also give defendant an opportunity to show procedural irregularities. Finally, disclosure is necessary so that the defense can assist the Court in making an accurate determination of the legality of the surveillance and whether proper applications were presented to the FISA court.

### B. The primary purpose of the electronic surveillance was domestic activity and not foreign intelligence information.

Prior to October 26, 2001, §1804(a)(7)(B) required that the application for a FISA wiretap certify that "<u>the</u> purpose of the surveillance is to obtain foreign intelligence information." Although the term "<u>the</u> purpose" was changed on October 26, 2001, under the USA PATRIOT Act, to "<u>significant</u> purpose," the FISA wiretaps in this case occurred almost entirely prior to that date. It appears from the facts known to defendant Hassoun that the primary purpose, if not "<u>the</u> purpose,"[7] of the electronic surveillance to which he was subjected did not meet the statutory requirement "to obtain foreign intelligence information."

---

[7]*See In re Sealed Case*, 310 F.3d at 732 (noting that "the purpose" in §1804(a)(7)(B) has been interpreted as "primary purpose").

13

As set forth in the Factual Background section, the investigation of defendant Hassoun appears to have begun during and as part of the investigation of Sheikh Omar Abdel Rahman. But that investigation appears to have been substantially, if not primarily, an investigation into Rahman's <u>criminal activities</u> in the United States. In other words, the FBI was investigating Rahman and his supporters and contacts for their role in planning <u>criminal activities</u> in the United States. If, as defendant Hassoun believes, this investigation is what led to the wiretaps on which he was intercepted, then the primary purpose of the surveillance was <u>not</u> to obtain foreign intelligence information.

The Court should order the government to disclose the FISA applications and related materials to the defense to allow the defense to provide input to the Court regarding the very crucial determination as to whether foreign intelligence or a criminal investigation was the government's primary purpose in conducting these wiretaps. For if it was a criminal investigation, as defendant Hassoun believes, then all of the evidence derived from the surveillance of defendant Hassoun pursuant to FISA applications should be suppressed for their failure to seek appropriate authority under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 99 2510-2520 (1982), rather than under FISA.

C.  **The FISA applications may contain intentional or reckless material falsehoods or omissions, in violation of *Franks v. Delaware*, 438 U.S. 154 (1978).**

*Franks v. Delaware*, 438 U.S. 154 (1978) establishes the circumstances under which the target of a search may obtain an evidentiary hearing concerning the veracity of the information set forth in a search warrant affidavit. "[W]here the defendant makes a

substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 156-57.

*Franks* establishes a similar standard for suppression following the hearing: "In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit a false material set to one side, the affidavit is remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156; see *United States v. Blackmon*, 273 F.3d 1204, 1208-10 (9th Cir. 2001) (applying *Franks* to Title III wiretap application); *United States v. Meling*, 47 F.3d 1546,1553-56 (9th Cir. 1995) (same); *United States v. Duggan*, 743 F.2d 59, 77 n.6 (2d Cir. 1984) (suggesting that *Franks* applies to FISA applications under Fourth and Fifth Amendments); *see also United States v. Hammond*, 351 F.3d 765,770-71 (6th Cir. 2003) (applying *Franks* principles).

The *Franks* principles apply to omissions as well as to false statements. *See, e.g.,United States v. Carpenter* 360 F.3d 591, 596-97 (6th Cir. 2004); *United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997). Omissions will trigger suppression under *Franks* if they are deliberate or reckless and if the search warrant affidavit, with omitted material added, would not have established probable cause. *See, e.g. id.*

Without the opportunity to review the applications, defendant Hassoun, of course, cannot point to or identify any specific false statements or material omissions in those

15

applications. Although our lack of access prevents us from making the showing that *Franks* ordinarily requires, we note that the possibility that the government has submitted FISA applications with intentionally or recklessly false statements or materials omissions is hardly speculative. On <u>more than seventy-five known occasions</u>, the government has confessed error relating to "misstatements and omissions of material facts" that it had made in its FISA applications. *In re All Matters Submitted to the Foreign Intelligence Surveillance Court*, 218 F. Supp. 2d 611, 620-621 (Foreign Int. Surv. Ct. 2002), abrogated on other grounds, *In re Sealed Case*, *supra*. Thus, although we do not know whether any of the FISA applications in this case are among those that the DOJ has identified as containing false statements, there is no assurance that they are not. Disclosure is, therefore, necessary so that this Court can conduct a *Franks* hearing at which defendant Hassoun will have the opportunity to prove that the affiants before the FISA court intentionally or recklessly made materially false statements and omitted material information from the FISA applications.

**D.     The government may not have made the required certifications, or may have failed to obtain necessary extensions to prior FISA orders.**

The Court should ensure that the FISA applications contain all of the certifications required under §1804(a)(7). As the Ninth Circuit has declared in the Title III context: "The procedural steps provided in the Act require 'strict adherence,'" and "'utmost scrutiny must be exercised to determine whether wiretap orders conform to [the statutory requirement].'" *Blackmon*, 273 F.3d at 1207 (quoting *United States v. Kalustian*, 529 F.2d 585, 588, 589 (9th Cir. 1975)).

In addition, the Court should examine two certifications with particular care -- (i) that

the information sought is "the type of foreign intelligence information designated," and (ii) that the information "cannot reasonably be obtained by normal investigative techniques." See §1804(a)(7)(E). Particularly if the target of the wiretap is a "United States person," these two certifications must be measured by the "clearly erroneous" standard. See 1805(a)(5). As the Ninth Circuit has observed concerning the similar provision in Title III, 18 U.S.C. § 2518(1)(e), "the necessity requirement 'exists in order to limit the use of wiretaps, which are highly intrusive,' "Blackmon, 273 F.3d at 1207 (quoting United States v. Bennett, 219 F.3d 1117, 1121 (9th Cir. 2000) (internal quotation omitted)). The necessity requirement, "ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the [information sought]." Id.

Finally, the Court should carefully examine the dates, in sequence, of all FISA orders in this case to determine whether there were any lapses of time during which wiretapping continued. The statutory scheme contemplates a seamless web: -- when a FISA order expires, if the government wishes to continue the wiretap, the expiring order must be replaced by an extension order, which, in turn, may be obtained only on the basis of a proper FISA application. See §1805(e)(1),(2). A wiretap that continues to run past the expiration date of the FISA order that originally authorized it is just as unauthorized as a wiretap that is initiated without any FISA order at all. Should the Court order the government to disclose the FISA orders in this case, as defendant Hassoun requests the Court to do, the defense will be able to assist the Court in matching up all of the FISA orders by date, an arduous, albeit necessary, task.

**WHEREFORE**, defendant Adham Amin Hassoun respectfully requests that this Honorable Court undertake a careful review of the applications for FISA wiretaps in this case, and based upon that review, disclose the applications, orders and related materials, hold a *Franks v. Delaware* hearing, and suppress all intercepts of defendant Hassoun derived from illegally authorized FISA surveillance.

Respectfully submitted,

| | |
|---|---|
| **KENNETH M. SWARTZ** | **JEANNE BAKER** |
| SWARTZ & LENAMON | ATTORNEY AT LAW, P.A. |
| New World Tower, Suite 2100 | Grove Forest Plaza, Suite 202 |
| 100 North Biscayne Boulevard | 2937 Southwest 27th Avenue |
| Miami, Florida 33132 | Miami, Florida 33133-3703 |
| Tel:305-579-9090 | Tel: 305-443-1600 |
| Fax:786-425-2380 | Fax: 305-445-9666 |
| Florida Bar No. 331929 | Florida Bar No.0880700 |

**COUNSEL for ADHAM AMIN HASSOUN**

By: /s/ Kenneth M. Swartz
KENNETH M. SWARTZ

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via U.S. Mail this 13th day of February, 2006, upon Russell Killinger, Assistant United States Attorney, 99 N. E. Fourth Street, Miami Fl 33132, William W. Swor, 3060 Penobscot Building, 645 Griswold St., Detroit, Michigan 48226, Michael Caruso, Assistant Federal Public Defender, 150 W. Flagler Street, Suite 1700, Miami, FL 33130, and Andrew Patel, 111 Broadway, 13th Floor, New York, N.Y. 10006.

_Kenneth M. Swartz_ by JS
Kenneth M. Swartz, Esq.