# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## CASE NO. 04-60001-CR-COOKE

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ADHAM AMIN HASSOUN, et. al.,

        Defendant.

_____/

## ORDER DENYING DEFENDANT HASSOUN'S MOTION TO DISMISS COUNTS 5-11, THE FALSITY COUNTS AND GRANTING HASSOUN'S MOTION TO SEVER THE FALSITY COUNTS

**THIS CAUSE** came before the Court upon the defendant Adham Amin Hassoun's respective Motions to Dismiss Counts 5-11, the Falsity Counts [D.E. 592], and to Sever the Falsity Counts (Counts 5-11) [D.E. 591], both filed on October 2, 2006. This Court has reviewed the motions, the subsequent pleadings and conducted a hearing with regard to these motions on December 18, 2006, and finds as follows:

### I.    FACTS AND PROCEDURAL HISTORY

In the Fifth Superseding Indictment [D.E. 141] (the "Indictment"), the government jointly charged five defendants—Adham Amin Hassoun, Mohamed Hesham Youssef, Kifah Wael Jayyousi, Kassem Daher and Jose Padilla[1]—with three counts relating to the defendants' collective efforts to

---

[1] Defendants Hassoun, Jayyousi and Padilla are before the Court at this time.

further jihad overseas.[2] These three counts, "the material support and conspiracy counts," are the only counts in the Indictment that implicate all of the defendants. In fact, these three counts are the only counts in the Indictment that charge any defendant other than Mr. Hassoun. The remaining eight counts in the Indictment—Counts 4 through 11—charge only defendant Hassoun, and are related to his own independent acts, perpetrated without the assistance or support of the other four defendants. Of these eight counts, seven currently remain included in the Indictment. Count 4 charged Hassoun with unlawful possession of a firearm, and has already been severed [D.E. 483]. However, Counts 5 through 11, "the falsity counts," have remained intact and are the subject of Defendant Hassoun's motions that are presently before this Court.

The falsity counts cover Mr. Hassoun's various acts of alleged obstruction, all related to the underlying substantive material support and conspiracy counts. Count 11 charges Hassoun with obstructing his immigration proceedings, based in large part on his alleged complicity in the activities charged in Counts 1, 2 and 3. The remaining counts all relate to individual instances of alleged obstruction: Count 5 charges Hassoun with making false statements to federal agents regarding the scope of his involvement with co-defendant Youssef in the activities charged in Counts 1, 2 and 3 and Counts 6 through 10 charge Hassoun with perjury for testifying falsely during the immigration proceeding.

Defendant Hassoun's Motion to Dismiss Counts 5-11, filed on October 2, 2006 [D.E. 592], argues that the seven falsity counts are fatally defective as a matter of law. Accordingly, Hassoun

---

[2] Count 1 charges the defendants with "Conspiracy to Murder, Kidnap, and Maim Persons in a Foreign Country" in contravention of 18 U.S.C. §956(a)(1) and (2). Count 2 charges "Conspiracy to Provide Material Support to Terrorists" in contravention of 18 U.S.C. §371 and 2339(A). Count 3 charges the defendants with providing "Material Support to Terrorists" in contravention of 18 U.S.C. §2339A(a) and 2.

contends that these counts should be dismissed from the face of the Indictment. The government filed its Response on October 26, 2006 [D.E. 627]. Defendant Hassoun subsequently filed his Reply on November 22, 2006 [D.E. 683]. Additionally, in conjunction with the Motion to Dismiss, Hassoun filed a Motion to Sever Counts 5-11 on October 2, 2006 [D.E. 591]. In this motion, Hassoun requests that in the event that this Court does not dismiss the falsity counts, they be severed from the material support and conspiracy counts and be tried separately. Defendant Hassoun contends that joinder of the falsity counts with the material support and conspiracy counts is prejudicial. Accordingly, Hassoun claims that all of the falsity counts should be severed from the material support and conspiracy counts under Rule 14. Additionally, Hassoun asserts that since Count 10, in particular, has no "common thread" with any of the other counts, it is mis-joined under Rule 8 and consequently should be severed. The government refuted these contentions in its October 24, 2006 Response [D.E. 618]. Defendant Hassoun subsequently filed his Reply to the government's Response on November 22, 2006 [D.E. 684]. For the reasons addressed in this Order, Defendant Hassoun's Motion to Dismiss the Falsity Counts is DENIED and Hassoun's Motion to Sever the Falsity Counts is GRANTED.

## II.    LEGAL STANDARD

### A.    MOTION TO DISMISS THE FALSITY COUNTS

When judging the sufficiency of an indictment, this Court is obligated to take the indictment's allegations to be true and assess whether a criminal offense has been stated. See United States v. Fitapelli, 786 F.2d 1461, 1463 (11th Cir. 1986). At this stage in the proceeding, the factual allegations in the indictment must be viewed in the light most favorable to the government. United States v. Belcher, 927 F.2d 1182, 1185 (11th Cir. 1991). Furthermore, in considering the

Indictment's allegations for purposes of a motion to dismiss, this Court is limited to reviewing the face of the Indictment, and more specifically, the language used to charge the crimes. See United States v. Sharpe, 438 F.3d 1257 (11th Cir. 2006).

Although Federal Rule of Criminal Procedure 12(b) permits dismissal where there is an infirmity of law in the prosecution, "a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." See United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987), see also United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir. 1978)[3] (noting that on a motion to dismiss the indictment, it is improper for the district court to pierce the pleadings or make a premature resolution of the merits of the allegations). "The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of [the charges against him so that he may adequately prepare his defense and preserve subsequent double jeopardy defenses]." United States v. Debrow, 346 U.S. 374, 376 (1953).

Consistently, the Eleventh Circuit has cautioned against the premature dismissal of indictment counts. In United States v. Plummer, 221 F.3d 1298, 1302 (11th Cir. 2000), the Eleventh Circuit noted that the district court's premature dismissal resulted from its consideration of facts not alleged in the indictment. Id. at n.3. The court held that "[a]t [the pretrial] stage . . . the focus is the indictment itself." Id.

Limiting the Court's analysis to the contents of the indictment comports with a criminal

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit, in an *en banc* decision, adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

defendant's right to have issues of fact decided by a jury; there is no summary judgment mechanism in a criminal trial. See United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam) (noting that the Rules do not provide for a pre-trial sufficiency of the evidence determination). Put simply, "[t]he Court may dismiss the case based upon: (1) a legal infirmity or defect in the charging instrument; or (2) a purely legal question, such as a determination that the statute is unconstitutional." United States v. Ferguson, 142 F. Supp. 2d 1350, 1353-54 (S.D. Fla. 2000). Issues that require consideration of facts outside the narrow realm of these wholly legal inquiries are not the proper subject of a pretrial motion to dismiss in a criminal prosecution. Id.

For the Indictment counts at issue in this case to effectively overcome the challenges raised in the defendant's Motion to Dismiss, this Court must first consider the constituent elements of the crimes charged. Once the crimes' elements are laid out, it is incumbent upon this Court to review the Indictment's allegations and, taking the allegations to be true, assess whether the prosecution has stated a criminal offense.

Count 5 charges Hassoun with providing false statements to FBI and Department of Homeland Security (DHS) agents in contravention of 18 U.S.C. § 1001. A conviction under 18 U.S.C. § 1001 requires proof that the defendant: (1) specifically intended (2) to make a materially (3) false (4) statement (5) in a matter over which a federal agency exercises jurisdiction. United States v. Godinez, 922 F.2d 752, 755 (11th Cir. 1991).

Counts 6-10 charge Hassoun with providing perjured testimony during an Immigration Court proceeding in contravention of 18 U.S.C. § 1621(1). To prove a defendant has violated 18 U.S.C. § 1621(1) the prosecution must show that the defendant (1) provided testimony made under oath or affirmation (2) that was false (3) with regard to a material matter, (4) and was given with the willful intent to provide false testimony and not as a result of a mistake, confusion or faulty memory. Id.;

United States v. Dunnigan, 507 U.S. 87, 94 (1993). In other words, "[i]n order to prove that a defendant committed perjury, the government must prove that his statements were false and that he did not believe them to be true." United States v. Forrest, 623 F.2d 1007, 1110 (5th Cir. 1980).

The crime of perjury is committed the moment the defendant utters the perjurious statements. Thus, there is no need to prove any governmental reliance. Rather, "[t]o satisfy the element of materiality, it is enough if the statements had a 'natural tendency to influence or be capable of affecting or influencing, a governmental function." United States v. Diaz, 690 F.2d 1352, 1357 (11th Cir. 1982) (quoting United States v. Markham, 537 F.2d 187, 196 (5th Cir. 1976)).

Lastly, Count 11 charges Hassoun with Obstruction of Justice in violation of 18 U.S.C. § 1505. The count alleges that Hassoun is guilty of corruptly endeavoring to influence, obstruct, and impede the due and proper administration of law during a pending proceeding before the immigration court from June 12 until September 30, 2002. 18 U.S.C. § 1515, the definitional subsection for 18 U.S.C. § 1505, defines the term "corruptly" as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." 18 U.S.C. § 1515.

### B.    MOTION TO SEVER THE FALSITY COUNTS

In addition to Hassoun's Motion to Dismiss the Falsity Counts, he also filed a Motion to Sever the Falsity Counts based on an alternative set of legal theories. Hassoun presents two distinct arguments in support of his Motion to Sever. First, Mr. Hassoun requests that all of the falsity counts be severed from the material support and conspiracy counts on the basis of prejudice under Rule 14. Second, Hassoun argues that Count 10, in particular, has no "common thread" with any of the other counts, rendering it misjoined under Rule 8.

Rule 14 of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[i]f the

joinder of offenses . . . in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed R. Crim. P. 14(a). In <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993), the Supreme Court set forth the test for determining when Rule 14 mandates severance. In <u>Zafiro</u>, the Court held that "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Id.</u> The Eleventh Circuit recently acknowledged <u>Zafiro</u>'s circumscribed scope and clarified that "there are only two circumstances in which severance is the only permissible remedy." <u>See</u> <u>United States v. Blankenship</u>, 382 F.3d 1110, 1122 (11th Cir. 2004).

Interpreting the Court's <u>Zafiro</u> opinion, the Eleventh Circuit held that "the first scenario for mandatory severance . . . exists only where a joint trial leads to the denial of a *constitutional* right." <u>See</u> <u>Blankenship</u>, 382 F.3d at 1123 (emphasis added). Additionally, with regard to <u>Zafiro</u>'s second circumstance—a serious risk that the jury would be prevented from making a reliable judgment about guilt or innocence—the court noted that there was no exhaustive list indicating in what instances this prong is met. <u>Id.</u> (noting that "factors [other than those delineated by the court] could also prevent a jury from making 'a reliable judgment'"). Ultimately, in deciding whether severance is appropriate in this case, this Court "must balance the right of the defendant to a fair trial against the public's interest in efficient and economic administration of justice." <u>United States v. Baker</u>, 432 F.3d 1189, 1236 (11th Cir. 2005) (quoting <u>United States v. Alvarez</u>, 755 F.2d 830, 857 (11h Cir. 1985).

### III.  ANALYSIS

#### A.  MOTION TO DISMISS THE FALSITY COUNTS

In order to determine whether any of the falsity counts need to be stricken from the face of

the Indictment, this Court must assess whether the Indictment's allegations, when taken as true, meet the statutorily prescribed elements of the charged criminal counts. In making these determinations, this Court does not consider evidence outside of the Indictment. Considering the evidence and conducting the underlying factual analysis is within the realm of the jury's fact-finding function.

### 1. COUNT 5 — FALSE STATEMENTS

In order to avoid dismissal on the Count 5 false statement charge the government must allege that Hassoun: (1) specifically intended (2) to make a materially (3) false (4) statement (5) in a matter over which a federal agency exercises jurisdiction. 18 U.S.C. § 1001; United States v. Godinez, 922 F.2d 752, 755 (11th Cir. 1991). On the face of the Indictment, the government has met this preliminary hurdle. Count 5 properly alleges that Hassoun made statements, and provides the nature of the statements' falsity. Hassoun's statements indicated that "he neither encouraged nor assisted an individual named Mohamed Youssef regarding travel to any foreign country," when, according to the Indictment, Defendant Hassoun did indeed encourage and assist Youssef regarding travel to a foreign country. Hassoun's statements also indicated that "he was not aware of Mohammed Youssef visiting a foreign country other than Egypt," when, according to the Indictment, Hassoun knew that Youssef traveled to a foreign country other than Egypt. Additionally, the Count alleges that the statements' falsity was of material import and that Hassoun was fully aware of their falsity, since the statements were made "knowingly and willfully." Lastly, the Count charges that the statements were made within the jurisdiction of the DHS and FBI, placing them squarely within the realm of the executive branch of the United States government.

Despite the Indictment's straightforward and succinct recitation of the applicable allegations in this Count, Defendant Hassoun takes offense to the charge for three reasons. Initially, Hassoun argues that the "truth paragraphs" alleged in Count 5 fail to satisfy the "stark contrast rule" as

articulated in <u>United States v. Cowley</u>, 720 F.2d 1042, 1044 (9th Cir. 1983).[4] Defendant Hassoun's

argument that the false statements contained in Count 5 and the accompanying truth paragraph do

not comport with the "stark contrast" rule is unpersuasive. Count 5 charges that Hassoun told agents

that he had "*neither encouraged nor assisted an individual named Mohamed Youssef regarding*

*travel to any foreign country*" when, in truth and in fact he "*encouraged and assisted Youssef*

*regarding travel to a foreign country* for the purpose of fighting in a violent jihad." Indictment, pp.

19-20 (emphasis added). Additionally, Count 5 charges that Hassoun "*was not aware of Mohamed*

*Youssef visiting a foreign country other than Egypt*," when, in truth and in fact Defendant Hassoun

*"knew [that] Youssef had traveled to a foreign country other than Egypt* for the purpose of fighting

in a violent jihad." Indictment, p. 20 (emphasis added). In these two instances, the Indictment's

"truth paragraphs" succeed in carrying out the precise function that a "truth paragraph" is intended

to accomplish. The truth statements directly contradict the assertions Hassoun made to FBI and DHS

agents.

      Hassoun's illusory distinction between a garden-variety "truth statement" and the statements

presented in this Indictment is fatally flawed. The fact that the "truth statements" provided additional

information regarding Hassoun's knowledge of the purpose of Youssef's travel does not remove the

statements from the realm of contradiction. The further detailed "truth statements" still refute the

---

[4] It is worth noting that Defendant Hassoun cites no case law from this Circuit suggesting that inclusion of a "truth paragraph" is imperative for the sufficiency of a false statement or perjury count. The Eleventh Circuit has never specifically mandated a "stark contrast rule," prescribing that the "truth paragraph" be set forth in "stark contrast" to the Defendant's allegedly false or perjurious statement. Nevertheless, this Court need not decide whether a "truth paragraph" implicating the "stark contrast" rule is necessary in all instances. In this case, the Indictment includes a truth paragraph that adequately sets out the alleged truth in stark contrast to the false statement included in the Count.

broader denials made by Hassoun because they both stay squarely within the parameters of his initial statement. Defendant Hassoun's statements to the FBI and DHS agents were expansive and overarching in scope. The assertion that Hassoun "neither encouraged or assisted an individual named Mohamed Youssef regarding travel to any foreign country" carries with it a host of implications. Namely, since Hassoun claims that he had no hand in assisting or encouraging Youssef regarding foreign travel, he is implicitly asserting that he did not assist or encourage Youssef to travel to a foreign country to visit family, for a vacation, to fight in a violent jihad or for any other purpose. Accordingly, Hassoun's statement that he "was not aware of Mohamed Youssef visiting a foreign country other than Egypt," carries with it the same bevy of implications. Hassoun alleges an utter lack of knowledge regarding Youssef's travel to foreign countries other than Egypt. This statement connotes a corresponding lack of knowledge regarding all of Youssef's activities during his travels in foreign countries other than Egypt. The whole of the first statement is greater than its collective parts and respectively refutes all of them.

Hassoun's claim that the phrase "for the purpose of fighting in violent jihad" is "quintessentially . . . fundamentally ambiguous," Def. Mot. p. 10, is baseless. A question is deemed fundamentally ambiguous as a matter of law when it "is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time . . ." United States v. Manapat, 928 F.2d 1097 (11th Cir. 1991). Falsity convictions may not be premised upon fundamentally ambiguous questioning because "the court cannot allow juries to criminally convict a defendant based on their guess as to what the defendant was thinking at the time the response was made." Id. However, "[w]hen a question is arguably ambiguous, defendant's understanding of the question is a matter for the jury to decide." Id.

In this instance, this Court need not determine whether the phrase "for the purpose of fighting in violent jihad" is fundamentally ambiguous. As the Eleventh Circuit articulated in <u>Manapat</u>, the contention with "fundamentally ambiguous" questioning is the court's justifiable concern that a false statement or perjury conviction could potentially be premised upon a misunderstanding. <u>See</u> <u>Manapat</u>, 928 F.2d at 1099-1100. There is no language on the face of the Indictment indicating that Hassoun was faced with interpreting the term "jihad" or "violent jihad" at the time he made the allegedly false statements charged in Count 5. The crux of the false statement count is Hassoun's alleged encouragement and assistance with regard to Youssef's foreign travel and his alleged knowledge of Youssef's travel to countries other than Egypt. The Count does not charge Hassoun with making false statements pertaining to Youssef's involvement in jihadist activities. Furthermore, the government's inclusion of a statement imputing to Hassoun knowledge of Youssef's alleged jihadist activities does not change the fact that any potential ambiguity regarding this term in no way confounded or affected Hassoun's answers. The questions posed by DHS and FBI agents and the answers given by Hassoun do not expressly or implicitly reference "jihad" or "violent jihad." Thus, with respect to Count 5, interpreting whether the phrase "for the purpose of fighting in violent jihad" is fundamentally ambiguous, arguably ambiguous, or unambiguous is a moot exercise.

Defendant's reliance on <u>United States v. Lattimore</u>, 127 F. Supp. 405 (D.D.C.), *aff'd* 232 F.2d 334 (D.C. Cir. 1955), is misplaced. In <u>Lattimore</u>, the defendant's charges stemmed from his declaration that he was not a "follower of the Communist line." Thus, the term deemed fundamentally ambiguous was central to the statement made by the defendant. In <u>Lattimore</u>, the inherent ambiguity related precisely to the ideology that the Defendant allegedly prescribed to and was being questioned about. On the contrary, Count 5 does not allege that Hassoun's false statements were provided in response to questioning about his involvement in the purportedly

"ambiguous" activity. Nor does Count 5 charge that Hassoun's false statements are in any way predicated upon Youssef's involvement in the purportedly "ambiguous" activity. Rather, Count 5 charges that Hassoun made false statements regarding two entirely distinct matters—namely, his involvement in encouraging and assisting Youssef to travel to a foreign country and his knowledge of Youssef's foreign travel to a country other than Egypt—which do not implicate "fundamental ambiguity" concerns. Thus, <u>Lattimore</u> by no means supports Hassoun's claim that his statements were predicated on a "fundamental ambiguity."

Finally, Hassoun claims that Count 5 merits dismissal because it suffers from the vice of imprecise questioning. This argument is similarly premised on defendant Hassoun's failure to understand the contours of the government's False Statement charge. Count 5 charges Hassoun with providing false statements to federal agents regarding his involvement in encouraging and assisting Youssef to travel to a foreign country and his knowledge of Youssef's foreign travel to a country other than Egypt. This Count will stand or fall regardless of Hassoun's knowledge of the intended purpose of Youssef's travel. There was no reason for the agents to more precisely question Hassoun. Any inquiry concerning the purpose of Youssef's travel was unrelated to and exceeded the scope of this line of questioning.

Count 5 satisfactorily charges Hassoun with making false statements to FBI and DHS agents in contravention of 18 U.S.C. § 1001(a). Any issues related to interpreting precisely what Hassoun meant when uttering the statements are appropriately left for the jury to decide after a consideration of all of the evidence presented at trial.

### 2. COUNTS 6-10 — PERJURY

Counts 6-10 each separately charge Hassoun with having provided perjured testimony during an immigration court proceeding in violation of 18 U.S.C. §1621(1). To prove that Hassoun has

violated 18 U.S.C. §1621(1), the government must allege and prove that his testimony was (1) made under oath or affirmation; (2) was false; (3) was material; and (4) was given with the wilful intent to provide false testimony, rather than as a result of mistake, confusion, or faulty memory. See United States v. Dunnigan, 507 U.S. 87, 94 (1993); 18 U.S.C. §1621(1).

### a.     COUNT 6

Count 6 alleges that Hassoun perjured himself in two specific instances during the following colloquy before the immigration court:

> Q.     And was he one of your recruits as has been said in the affidavit?
> A.     I never recruited him.
> Q.     And how – what's your phone contacts with Mr. Yousef? [sic]
> A.     At that time after he left to Egypt?
> Q.     Yes.
> A.     When he left to Egypt he kept in touch and he used to call to ask about how the community is doing over here and how the family is doing and that was it.

[D.E. 141, pp. 20-21]. According to the Indictment, this testimony, given under oath, was materially false because at the time Hassoun provided the testimony he (1) knew that he had recruited Youssef to fight in violent jihad and (2) had conducted conversations with Youssef regarding violent jihad. Id. at 21.

With regard to specification (1), Hassoun claims that both the question and the answer are fundamentally ambiguous because they are "vague and indefinite." Hassoun's first contention is premised on grammatical considerations. Namely, Hassoun claims that "recruits" used as a plural noun in this context denotes a new member of a group. Hassoun claims that the Indictment's failure to specify precisely what group the questioner was referring to renders it "inherently vague."

Though Hassoun focuses considerable attention on the purportedly "vague and indefinite" nature of the questioning, this is not the correct standard for a determination of "fundamental

ambiguity." A question is designated fundamentally ambiguous as a matter of law when it "is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time . . . ." Manapat, 928 F.2d at 1100. Accordingly, this Court need not answer whether the question, as posed, was vague or indefinite. In this instance, it is surely possible that both parties knew precisely what group the questioner was asking about. Thus, this exchange necessitates an inquiry into the question's context as well as a careful consideration of the pertinent evidence.

The question posed in specification (1) is not fundamentally ambiguous. At most, this question and its respective terminology may be "arguably ambiguous." However, even *assuming arguendo* that this is the case, the Count does not warrant dismissal. In Manapat, the Eleventh Circuit unequivocally prescribes that "[w]hen a question is arguably ambiguous, defendant's understanding of the question is a matter for the jury to decide." Id. In these circumstances, where an answer would be true on one construction of the question but false on another, the jury, not the court on a pretrial motion to dismiss, is responsible for determining the defendant's understanding of the question. See United States v. Swindall, 971 F.2d 1531, 1553 (11th Cir. 1992); United States v. Bell, 623 F.2d 1132, 1136 (5th. Cir. 1980).

Additionally, Hassoun claims that his answer was non-responsive. Hassoun contends that since his answer merely specified that *he himself* did not do the recruiting, the questioner's inquiry was never adequately addressed. This argument however, is similarly unavailing. There is no indication on the face of the Indictment that Hassoun did not understand the question posed to him. Men of ordinary intellect could agree upon the definition of the term "recruits" in the absence of further definition at the time of questioning. Furthermore, this Court is not persuaded that this question could not be understood mutually by the questioner and Hassoun without first defining the

word "recruits." The questioner and Hassoun could have very likely both interpreted the use of the term "recruits" to denote individuals that Hassoun himself had recruited. "Where . . . the answer given is responsive to the question asked and 'it is entirely reasonable to expect a defendant to have understood the terms used in the question,' a charge of perjury may not be dismissed for insufficiency." United States v. DeZarn, 157 F.3d 1042, 1047 (6th Cir. 1998) (*quoting* United States v. Slawik, 548 F.2d 75, 86 (3d. Cir 1977)). While different interpretations of the questioners inquiry and Hassoun's corresponding response may be plausible, such a determination is better left within the province of the jury. Additionally, a perjury conviction is not precluded merely because it is premised upon some ambiguous questions. If the defendant's response was false given his understanding of the question, "his conviction is not invalidated by the fact that his answer to the question might generate a number of different interpretations." See Swindall, 971 F.2d at 1553.

Furthermore, *assuming arguendo*, that Hassoun's answer was unresponsive, his attempt to invoke Bronston's protection is imprudent. Bronston protects literally true unresponsive answers, even in cases where those answers are specifically contrived by the witness to evade or mislead the questioner. See Bronston, 409 U.S. at 361-62. However, Bronston's holding is narrow in scope, and does not protect unresponsive, *but false*, testimony. Here, the Indictment specifically charges that Hassoun recruited Youssef. Thus, reading the Indictment in the light most favorable to the government, and taking its allegations to be true, Hassoun's claim that "[he] never recruited [Youssef]" is patently false, taking it out of the scope of Bronston's protective purview.

With regard to Specification (2), the same set of arguments adequately refute Defendant Hassoun's contentions. Hassoun testified that he discussed only matters related to "community" and "family" with Youssef. Specification (2) of the Indictment's 6th Count charges that Hassoun and Youssef discussed violent jihad over the telephone, thus rendering Hassoun's testimony fallacious.

Again, Hassoun takes issue with the purportedly "vague and inarticulately phrased" questioning posed to him in this exchange. The questioning by no means reaches the lofty threshold required for a showing of "fundamental ambiguity."

The questioning initially asks what Hassoun's phone contacts were with Youssef, and is subsequently narrowed to specifically delineate phone contacts conducted after Youssef left to Egypt. Ordinary men could agree upon a mutual understanding of this question without further interpretation. Defendant Hassoun contends that it is unclear whether the question was "about *content* of 'phone contacts' between Youssef and Hassoun, or a question about *who* contacted *whom*." Def. Omn. Mot. p. 14 (emphasis in original). Again, this claim is better left for a jury to resolve, after evaluating the full context of the allegedly perjurious testimony, as well as the information known to Hassoun at the time he provided the testimony.

Hassoun's contention that his response "and that was it" is fundamentally ambiguous is also unmeritorious. Namely, Hassoun contends that the fundamental ambiguity inherent in the question is imputed to this statement. Consequently, Hassoun claims this renders it impossible to determine if the answer related to the content of the calls, who contacted whom, or both. Hassoun is arguing for a novel interpretation of his answer to a seemingly straightforward question. While this Court fully acknowledges and appreciates Defendant Hassoun's right to present this argument to the jury at trial, this debate is not appropriate on a pre-trial motion to dismiss.

Finally, Hassoun's arguments with regard to the "stark contrast" rule are unpersuasive for the same reasons as set forth in Count 5. Consequently, Hassoun's contentions regarding the "fundamentally ambiguous" nature of the term violent jihad are also without merit. The bases of Hassoun's charged perjury in Count 6 are Hassoun's testimony that he never recruited Youssef and that after Youssef left for Egypt, Hassoun only telephonically discussed community and family with

him.  The truth statement claims that Hassoun recruited Youssef and discussed matters other than community and family with him.  The charge and its corresponding truth paragraph are sufficient.

### b.    COUNT 7

Count 7 charges that Hassoun perjured himself when he testified that he had provided Youssef with financial assistance in order to make improvements to his land and house in the following exchange:

> Q.    And did you ever provide anything – any monetary financial assistance to him?
>
> A.    At one point he wanted money to prepare a land that he was, this is what he said, and that land, I believe, is close to the Suez canal, somewhere like that.  And he asked if the community can help him to fix the land and the community responded and we helped him.
>
> Q.    Okay.  And was there any other purpose than the land that you owned there?
>
> A.    This is what he asked and this is what we respond.
>
> * * *
>
> Q.    Right.  And you said the money was for what?
>
> A.    To fix his land, fix his house.

[D.E. 141, pp. 21-22].  According to the Indictment, this testimony, given under oath, was materially false.  The Indictment charges that at the time Hassoun provided the testimony he knew that the financial assistance provided to Youssef was to be utilized for purposes other than land and home improvements, namely, for the purpose of fighting in violent jihad.  Id.

Defendant Hassoun's first contention relates to the second question and answer provided in the colloquy.  Hassoun claims that the question "[a]nd was there any other purpose than the land that you owned there?" is fundamentally ambiguous because it is "inarticulately phrased" and "suffers from indefiniteness."  Def. Omn. Mot. p. 16.  Additionally, Defendant Hassoun claims his answer, "[t]his is what he asked and this is what we respond" is non-responsive.  Both contentions are meritless at this stage in the proceedings.  With regard to the purported fundamental ambiguity of the

question, again, the standard is not whether the question was phrased in the most articulate or least confusing means possible. These factors surely play a role in the jury's consideration of the testimony at trial, but not at this stage of the litigation. The context of the question, especially considering the immediately preceding exchange regarding financial assistance for *Youssef's* property, lends credence to the argument that the question was not "fundamentally ambiguous." Furthermore, Hassoun's own response implies that he understood the question to relate to Youssef's land. Thus, this question, while perhaps arguably ambiguous, does not rise to a level of fundamental ambiguity.

Additionally, Hassoun's claim that his answer was non-responsive is similarly unavailing. The questioner's inquiry focuses on the purpose of the financial support. When the questioner attempted to delineate whether there was some other basis for the financial support, Hassoun responded "[t]his is what he asked and this is what we respond," indicating that Youssef had only asked for financial assistance to facilitate these two specifically designated purposes. This Court believes that this charge, as worded, sufficiently passes muster at this stage in the proceedings. Interpreting precisely what was meant and understood by the colloquy, as well as factoring in how Defendant Hassoun's English fluency may have affected his answers,[5] are best left for the jury .

Hassoun also argues that his answer to the third question, "[t]o fix his land, to fix his house," was the literal truth. This claim is not supported by the Indictment's allegations. At this stage of a criminal proceeding, the Court must read the factual allegations in the indictment in the light most favorable to the government. See United States v. Belcher, 927 F.2d 1182, 1185 (11th Cir. 1991).

---

[5] Despite the focus on the ambiguity of Hassoun's responses, no mention has been made in the pleadings of what role Hassoun's English fluency plays in this calculus. English is not Mr. Hassoun's first language. This fact is an important consideration when interpreting and attempting to provide meaning to Hassoun's answers. This unique situation likely entails an even more careful scrutiny and consideration of the evidence, thus providing further support for jury consideration of this issue.

From the face of the Indictment, this answer cannot possibly be the "literal truth" because the Indictment specifically charges that at the time he answered the question, Hassoun was aware that he had provided financial support to Youseff for ulterior purposes, namely fighting in violent jihad. This Court is limited to considering only the face of the Indictment at the Motion to Dismiss stage. See United States v. Sharpe, 438 F.3d 1257 (11th Cir. 2006). Thus, since the face of the Indictment refutes Hassoun's contention, his literal truth argument fails. Finally, Hassoun's contention that the inclusion of the phrase "for the purpose of fighting in violent jihad" requires dismissal of the Count is baseless for the reasons stated in the preceding Counts.

### c.   COUNT 8

Count 8 charges that Hassoun perjured himself when he denied, under oath, that he and Youssef had ever used coded language when speaking with each other. The Count charges that during the lengthy testimonial exchange,[6] Hassoun repeatedly denied using coded language. Specifically, the Count charges Hassoun with uttering material falsehoods pertaining to whether Youssef had enough "soccer equipment" to launch an attack on the enemy or to engage the enemy. Put simply, the Indictment charges that Hassoun knew that he had spoken with Youssef in coded language in the past, yet denied that this ever occurred.

Defendant Hassoun initially points out that the questions posed to him during the immigration court hearing asked whether he used "code" language, but the truth statement in Count 8 claims that Hassoun used "coded" language. Hassoun makes much of this distinction, and attempts to attribute the term "code language" to a plethora of definitions in an effort to cast the term as fundamentally ambiguous. However, Hassoun fails to properly read the term in the context of the Indictment's line

---

[6]  Due to the lengthiness of this particular exchange, it has not been included in this Order. The exchange is included in its entirety on pages 22-25 of the Indictment.

of questioning. A review of the exchanges included in the Indictment illustrates that there is a fair likelihood that Hassoun attributed the same definition of the term to that understood by the questioner. Even the most cursory review of the colloquy indicates that the term "code language" was used in the context of discussing Hassoun's discussion of "soccer equipment" as code for weaponry or armaments. Thus, this Court is not convinced that the term "code language," when used in this context, is not a term upon whose definition "men of ordinary intellect" could never agree upon. Manapat, 928 F.2d at 1100. This Court is compelled to reach this conclusion because it believes that most individuals, when conducting the exchange included in the Indictment, would form a mutual understanding of the term "code language." Thus, both parties would likely assume that the term relates to conversations where speakers use predetermined idiosyncratic euphemisms, rather than the esoteric definition proposed by Defendant. While the numerous definitions of the term "code language" may assist Defendant Hassoun in convincing a jury that their was no meeting of the minds between himself and the questioner, dismissal is premature at this juncture.

Thus, since Count 8 charges Hassoun with committing perjury by denying he had ever spoken in coded language when he in fact had, the Count's charge is proper. Specifically, the Count charges that Hassoun claimed that he "never" spoke with Youssef in code language. The government alleges that this claim, made under oath, was materially false, and was given with the wilful intent to provide false testimony. This charge and the supporting testimony provided in the Indictment adequately meet 18 U.S.C. §1621(1)'s prescriptive mandate. Therefore, since enough testimony is included in the Count to support the charge alleged, any contentions that defendant Hassoun has with the vagueness, ambiguity or unnecessary nature of any of the supporting testimony included in the charge should be addressed in a motion to strike surplusage, not a motion to dismiss. Finally, Hassoun's contentions regarding the stark contrast rule and the use of the term "violent jihadist activities" are

unfounded for the same reasons stated in the previous Counts.

### d.    COUNT 9

Count 9 charges that Hassoun perjured himself when he testified that he never spoke to

Youssef about any armed conflict in the following exchange:

> Q.    Sir, have you ever discussed with Youssef in any phone call his
>        experiences on the front lines?
> A.    What front lines?
> Q.    Front lines of any battle.
> A.    What battle?
> Q.    Any battle, any armed conflict.
> A.    He never spoke to me about any armed conflict.
> Q.    So you've never discussed with him his activities on the front
>        lines in any armed struggle or conflict?
> A.    I don't recall any of that happening.
> Q.    But it could have?
> A.    Not really. No.

The Count charges that despite Hassoun's claim that he and Youssef never discussed "any armed

conflict" or his "activities on the front lines in any armed struggle or conflict," Hassoun did in fact

participate in conversations with Youssef about "the experience of fighting in a violent jihad conflict."

Hassoun's assertion that the phrase "experiences on the front lines" is "subject to divergent

interpretations" requiring the Count to be dismissed on fundamental ambiguity grounds is utterly

baseless.  Although Defendant Hassoun correctly notes that the questioner narrowed the meaning of

"the front lines" to denote "any armed conflict," he incorrectly concludes that failure to define the

term "experiences" in the context of this question is fatal to the Count's charge.  Initially, the

questioner cast a very broad net when articulating this question.  Subsequently, the questioner

narrowed the question's scope to encompass Youssef's "experiences" in any "battle" or "armed

conflict."  The term "experiences" used in this context does not leave much room for interpretation.

Hassoun contends that it is unclear whether the term "experiences" means "'participation in activities'

(and, if so, what kind of 'activities'), . . . 'observation of activities' (and if so again what kind), or . . . just 'being present?'" Def. Omn. Mot. p. 23. This argument is unpersuasive because of the breadth of the term "experiences." The term "experiences"—as used in day-to-day parlance—encompasses not only personally undergoing or encountering something, but observing an incident as well. Thus, there was no reason for the questioner to further refine the inquiry since the question as phrased was over-inclusive and encompassed all the scenarios Hassoun postulated. Furthermore, Hassoun's response, stating that "[Youssef] never spoke to [him] about *any* armed conflict" (emphasis added), indicates that he understood precisely the expansive scope of the inquiry, and thus did not respond in a limiting fashion (e.g., "armed conflict that Youssef witnessed" or "armed conflict in which Youssef participated").

Additionally, Defendant Hassoun claims that the question "But it could have?" was confusing and unclear. This argument is not persuasive enough to remove the inquiry from the jury's purview. There is a strong likelihood that an individual of ordinary intellect, when faced with interpreting the question, "But it could have?" in this context, would place the same import on the terminology as that given by the questioner. The questioner was discernibly trying to determine whether Hassoun's answer that he did not "recall of that happening" (discussing Youssef's alleged activities on the front lines and in armed conflict) meant that the conversation never took place or that he merely could not recall the conversation taking place.

Hassoun's answer "Not really, No" indicates that the conversation could not have taken place. Hassoun's inventive characterization seemingly suggests that he was confused as to whether the question was attempting to determine whether these two individuals could, hypothetically, have such a conversation. This theoretical interpretation would not be the one placed upon this question by an individual of ordinary intelligence. Furthermore, Hassoun's response "Not really, No" lends

further credence to the notion that Hassoun was interpreting and answering the question in the manner in which it was asked and not in some imagined hypothetical sense.

Lastly, Defendant Hassoun's claims regarding the stark contrast rule fail for the same reasons set forth in the preceding Counts. Hassoun claimed that Youssef never spoke to him about *any* armed conflict. The truth paragraph's assertion that Youssef did indeed talk to Hassoun about the experience of fighting in a violent jihad conflict starkly contrasts and refutes the claim made by Hassoun. Again, the inclusion of the term jihad in the description merely provides additional specification to what has already adequately been laid out in the truth paragraph. Likewise, defendant Hassoun's claims regarding the fundamental ambiguity of the terms "violent jihad" must fail for the same reasons set forth in the preceding Counts.

### e.    COUNT 10

Count 10 charges that Hassoun committed perjury when he denied, under oath, that he had participated in conversations about planning to kill a woman in Lebanon [D.E. 141, pp. 27-29].[7] Specifically, the Count charged that Hassoun denied: (1) knowing anything about a woman "stuck in Lebanon;" (2) ordering the woman's assassination; (3) saying "I have to speak with brothers in Lebanon to take care of her" in a conversation five or six years earlier; (4) having a conversation with somebody about killing a woman; (5) having spoken to anyone who could claim to have overheard Hassoun saying that he wanted to kill or plot to kill another individual; and (6) knowing the woman referred to in paragraph 17 of the affidavit.[8] Conversely, the Indictment charges that Hassoun then

---

[7] Due to the lengthiness of this particular exchange, it has not been included in this Order. The exchange is included in its entirety on pages 27-29 of the Indictment.

[8] Hassoun was asked to review an affidavit prepared by an "Officer Arena" in conjunction with the testimony he provided to the immigration court.

and there knew that he participated in conversations about killing a woman in Lebanon. Furthermore, the Count charges that these denials were material and given with the wilful intent to provide false testimony.

Hassoun argues that Count 10 rests on a "seriously mistaken foundation." Namely, Hassoun asserts that the Count relies on "the incorrect and over-zealous *interpretation* that an FBI agent Arena gave to certain remarks Hassoun had made in Arabic-language telephone conversations on August 7, 1997 and August 10 1997." [D.E. 592, p. 26] (emphasis in original). Additionally, Hassoun claims that the government's transcripts of the phone calls aptly indicate that Count 10's specifications were responsive and literally true. Defendant Hassoun's arguments are both plagued by the same fundamental flaw. Both arguments require this Court to consider evidence outside the face of the Indictment in order to assess their respective merits. The persuasive import of these arguments should rightfully be given careful consideration during the trial. A pretrial motion, however, is not the proper mechanism for this type of attack.

Hassoun makes one argument with respect to Count 10 that does not require a consideration of extraneous materials outside of the Indictment. Hassoun contends that he was "bludgeoned" by the questioner's rephrasing and repeating of the same inquiry. Furthermore, Hassoun claims that this practice of "hammering away at a witness" creates the impression that the witness has committed several instances of perjury instead of one. This argument is baseless.

The government appears to have included a series of related alleged falsities about the same subject in order to lend context to the defendant's false statements. There is no indication that the questions were intended to "bludgeon" Hassoun. The questioner's line of inquiry appears to be primarily concerned with clarifying the issue, pinning down a clear recitation of Hassoun's version of the facts, and focusing Hassoun's answers. Furthermore, Defendant Hassoun misapplies the

holdings of Eleventh Circuit caselaw regarding repetitious questioning in perjury prosecutions. The cases Hassoun cites address the impropriety of charging *several counts* of perjury arising from the same line of questioning. The vices discussed in these cases include charging multiple offenses in a single count of a perjury indictment and imposing *more than one punishment* for claims requiring the same evidentiary proof of falsity. See United States v. De La Torre, 634 F.2d 792, 795 (5th Cir. 1981) (holding that it is not proper for the government to repeat and rephrase the same question in order to create more possible perjury counts); United States v. Langford, 946 F.2d 798, 802 (11th Cir. 1991) (noting that charging a single offense in two counts creates two vices: "First, the defendant may receive multiple sentences for the same offense. Second, a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes -- not one"). This is not the case here. Accordingly, Defendant's Hassoun's request to dismiss Count 10 of the Indictment is improper and must be denied.

### 3. COUNT 11 — OBSTRUCTION OF JUSTICE

Count 11 charges Hassoun with violating 18 U.S.C. § 1505 by corruptly endeavoring to influence, obstruct, and impede the due and proper administration of law during a pending proceeding before the Immigration Court from June 12 until September 30, 2002. In his Motion to Dismiss, Defendant Hassoun argued that the Count "simply does not belong in [the] Indictment at all." Def. Omn. Mot p. 30. Relying on the holding in United States v. Poindexter, 951 F.2d 369 (D.C. Cir. 1991), Defendant Hassoun initially asserted that extending the term "corruptly" to encompass the actual making of false and or misleading statements himself would render the statute's prescriptive mandate unconstitutionally vague. Thus, echoing the Poindexter court's holding, Defendant claimed that within the context of 18 U.S.C. § 1505, the term "corruptly" means "corrupting *another person* by influencing him to violate his legal duty." Id. at 379 (emphasis added). Thus, since Count 11 is

premised upon his own alleged false and misleading statements, Hassoun concluded that the charge was outside the scope of section 1505's purview. Accordingly, he maintained that the Count warranted dismissal.

Subsequently, however, Hassoun conceded in his Reply that the initial argument advanced in his motion for dismissal was fatally flawed. Hassoun acknowledged that Poindexter's holding had been overturned by Congress' enactment of 18 U.S.C. § 1515(b). Section 1515(b) provides, in pertinent part, that the term corruptly, when used in the context of this statutory provision, means "acting with an improper purpose, *personally or by influencing another, including making a false or misleading statement,* or withholding, concealing, altering, or destroying a document or other information." (emphasis added). Thus, the argument set forth by Defendant Hassoun in his initial motion fails. Congress clearly intended to abrogate the Poindexter holding and include those individuals who personally made false or misleading statements within 18 U.S.C. § 1505's scope.[9]

---

[9] Defendant Hassoun's Reply additionally introduced a new argument. Hassoun unconvincingly argues that the reason he inadvertently omitted 1515(b) from his original motion was because it was "a well-kept secret" unbeknownst to defense counsel. Furthermore, Hassoun claims that overlooking inclusion of this "secret" in the Indictment was of significant consequence since section 1515(b) "appears to create a whole new set of offenses, each with a whole new set of elements, to wit." Def. Omn. Mot. p. 43.

Hassoun's suggestion that section 1515(b) was somehow purposefully left out of the Indictment is completely unfounded. Furthermore, Hassoun's assertion that section 1515(b) adds new elements to the crime charged under 18 U.S.C. § 1505 is utterly baseless. Section 1515(b), provides: "As used in section 1505 [18 USCS § 1505], the term 'corruptly' means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." 18 U.S.C. § 1515(b). There is no doubt that 1515(b) was intended as a definitional section meant to clarify a term used in another substantive statutory section. In fact, section 1515's title leaves little room for speculation. The statutory heading "Definitions for certain provisions; general provisions" makes it clear that this is a definitional section.

Count 11 accurately tracks the language in 18 U.S.C. § 1505, the statute that Hassoun is charged with violating. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be

Lastly, Count 11 sufficiently informs Hassoun of the nature of the accusation against him. The Count charges that beginning on or about June 12, 2002 until on or about September 30, 2002, Hassoun "knowingly and willfully corruptly endeavor[ed] to influence, obstruct and impede the due and proper administration of law," at an immigration court proceeding in which he provided testimony. If Hassoun believes that Count 11 of the Indictment does not sufficiently apprise him of the nature of the government's charge, the appropriate remedy in this circumstance is a bill of particulars specifying the contours of the government's charge. See United States v. Freeman, 619 F.2d 1112, 1118 (5th Cir. 1980) ("We also disagree with appellants' argument that 'any of several acts conceivably underlay the Grand Jury's indictment,' because that argument 'confuses the Defendants' constitutional right to know what offense is charged with his need to know the evidentiary details establishing the facts of such offense' that can be provided through a motion for bill of particulars."). A request for bill of particulars is, *inter alia*, befitting in those instances where defendant seeks further clarity and precision with regard to the charges that he is facing in order to adequately prepare a defense. See United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985). Hassoun has yet to make such a request. Count 11 is sufficiently pled, and appropriate for jury

---

punished." Hamling v. United States, 418 U.S. 87 (U.S. 1974); see also United States v. Adkinson, 135 F.3d 1363 (11th Cir. 1998) (noting that "[a]n indictment need do little more than track the language of the statute charged to be sufficient"). This Court does not subscribe to Defendant Hassoun's novel interpretation of the government's obligations when charging an Indictment count. Not surprisingly, Defendant Hassoun fails to cite any caselaw in support of his argument that a definitional section creates new statutory elements, thus necessitating inclusion in the charging count of an Indictment. Failure to specifically cite to, or include the text of a definitional provision in an Indictment's count does not render it insufficient. See United States v. Pennington, 168 F.3d 1060, 1065 (8th Cir. 1999) ("The indictment's failure to cite § 1346, a definitional provision, and to use its specific term, "honest" services, does not mean no crime was charged . . . [Defendant] could not argue, that the indictment did not sufficiently apprise him of the charges and allow him to prepare effectively for trial.").

consideration at trial.

## B. MOTION TO SEVER THE FALSITY COUNTS

Defendant Hassoun augments his attack on the Indictment's falsity counts with a separately filed Motion to Sever the Falsity Counts [D.E. 591]. In this motion, Hassoun moves this Court to sever the falsity counts from the material support and conspiracy Indictment counts and try them separately. Defendant Hassoun makes two arguments in support of this request. Hassoun's first argument in favor of severance is premised upon the alleged prejudicial spillover that would ensue if these two classes of counts were tried together. Hassoun claims that Rule 14 of the Federal Rules of Criminal Procedure compels this Court to sever the entirety of the falsity counts in order to preserve his constitutionally protected right to present a "complete defense." Additionally, Hassoun claims that Count 10, in particular, should be severed because it has no "common thread" with the other Indictment counts, thus rendering it mis-joined under Rule 8. This Court need not consider the more circumscribed Rule 8 consideration because the fate of the falsity counts can be adequately determined upon a consideration of the more expansive Rule 14 inquiry.

### 1. SEVERANCE OF THE FALSITY COUNTS UNDER RULE 14

In order to assess whether severance is appropriate in this case it is incumbent upon this Court to "'balance the right of the defendant to a fair trial against the public's interest in efficient and economic administration of justice.'" United States v. Baker, 432 F.3d 1189, 1236 (11th Cir. 2005) (quoting United States v. Alvarez, 755 F.2d 830, 857 (11th Cir. 1985)). Rule 14(a) provides that "[i]f the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant . . ., the court may order separate trials of counts . . . or provide any other relief that justice requires." In Zafiro v. United States, 506 U.S. 534, 539 (1993), the Court articulated the rule for when severance under Rule 14 is proper. Under Zafiro's test, Hassoun is entitled to have the falsity counts severed upon

a showing that there is a serious risk that a joint trial will "compromise [one of his] specific trial right[s] or prevent the jury from making a reliable judgment about [his] guilt or innocence." Id.

Defendant Hassoun initially asserts that requiring him to defend both the falsity counts and the substantive material support counts simultaneously, at one trial, would impinge upon his right to present a complete defense, while at the same time not incriminating himself. See U.S. Const. amend. V; Holmes v. South Carolina, 126 S.Ct. 1727, 1735 (2006). Essentially, Defendant Hassoun contends that if forced to proceed to trial on all counts, his right to present a "complete defense" on the falsity counts will conflict with his constitutionally mandated right not to incriminate himself on the material support counts. Hassoun argues that this conflict of rights threatens to irreparably compromise, and consequently impede his ability to adequately defend himself at trial. Accordingly, Hassoun claims that he will inevitably compromise a specific trial right regardless of which trial strategy he employs, thus meeting Zafiro's first prong and necessitating severance. In this case, when balancing the right of the defendant to a fair trial against the public's interest in efficient and economic administration of justice the enormous potential for undue prejudice tips the scale in favor of severance.

Bronston v. United States, 409 U.S. 352 (1973), established that the perjury statute should not be invoked merely because a "wily witness" succeeded in derailing the questioner. Specifically, Bronston provides that when a defendant attempts to "stonewall," or evade questioning by providing literally true yet unresponsive answers, the perjury statute is not implicated. Furthermore, Bronston is clear that this is the rule even in cases where defendant "intended to mislead or divert the examiner." Id. at 359. Thus, Hassoun claims that in a joint trial, faced with defending against both the falsity counts and the conspiracy/material support counts, he will be forced to choose between antagonistic constitutional rights. If he advances a "stonewalling" defense—a stance sanctioned by

the Court in <u>Bronston</u>—his evasive behavior would inevitably send a message to the jury that he has something to hide. Thus, towing this course could potentially encroach upon Defendant Hassoun's Fifth Amendment right against self incrimination. Conversely, if Hassoun chooses to forego the "stonewalling" defense to avoid any undue juror prejudice with respect to the conspiracy and material support counts, he claims that he is not being provided with the opportunity to provide a complete defense.

Reading the Fifth Amendment in conjunction with <u>Holmes</u>' complete defense doctrine entitles Hassoun to present a stonewalling defense with regard to the falsity counts, without suffering the unnecessary prejudicial spillover that could impair his ability to conduct an adequate defense on the conspiracy and material support counts. However, if the falsity counts and the conspiracy/material support counts are tried together, Hassoun would be forced to choose between the two strategies and unnecessarily give up defenses to which he is constitutionally entitled. Furthermore, a jury charge directing that any defenses posed with regard to the falsity counts not be considered when deciding upon the material support and conspiracy counts will not ameliorate the problem. In this instance, this Court is not convinced that even a fair and reasonable juror could undeniably avoid an evidentiary spillover that could potentially poison the well of pure unbiased thought.

There are numerous reasons why an evidentiary spillover of this nature would have a particularly damaging effect on this case. The falsity counts at issue are not merely related to allegedly false statements made by Hassoun. Rather, the allegedly false statements Hassoun is charged with making go to the very subject at the heart of the conspiracy and material support counts. Namely, Hassoun's alleged support of, as well as involvement and complicity in, violent jihadist activity abroad. Thus, any "stonewalling" defense to the falsity counts premised on Hassoun's evasive behavior, will likely have a binary effect. This defense approach may suggest to the jury that

Hassoun is generally a cunning and calculated individual. This imputation is likely inevitable whenever a defendant tries to propound a "stonewalling" defense to shield himself from a falsity prosecution. However, the admittedly more deleterious connotation only presents itself in this case if the falsity counts and the conspiracy/material support counts are tried together. This added connotation would not only insinuate to the jury that Hassoun is being shrewd and deceptively guileful, but would also indicate that Hassoun is behaving in this insidious manner with respect to the very conspiracy and material support counts that the jury is being asked to consider. This problem would not arise if the allegedly false statements Hassoun was charged with making were unrelated or even tangentially related to the conspiracy and material support counts. However, this is not the case in the present scenario.

Furthermore, the very serious nature of the conspiracy and material support counts and the nature of the crimes charged, concern this Court. It is important that this Court avoid any undue prejudice that could potentially taint the jury in this case. In this instance, where the potential for prejudice is high and the effect of the prejudice profound, this Court is compelled to consider any measure that could mitigate or alleviate the problem. Severing the falsity counts negates the problem, and assures a fair trial, free from spillover.. Furthermore, Count 4, the gun charge, has already been severed from the Indictment. Thus, a separate trial is already in the cards for Defendant Hassoun. While severing the falsity counts may not lead to the quickest resolution of this matter, sometimes it is necessary for judicial economy to give way to the defendant's right to a fair trial.

It appears that the trial in this case will be a lengthy one, fraught with complex issues, an array of witnesses and novel, sometimes cumbersome, legal strategies. Navigating this arduous course will expend enormous amounts of all parties' to this actions time, effort and resources. If convictions were obtained at a trial where the falsity counts were not severed, and the Eleventh

Circuit later upheld Hassoun's arguments regarding the prejudicial effect of these counts, the drain on judicial resources would be substantial. Severing the falsity counts ensures a fair trial on both "sets" of counts and provides a safeguard against such an ill-fated outcome.[10]

Lastly, this Court finds the government's arguments in favor of denial unpersuasive. The government's reliance on Defendant Padilla's failed attempt to sever himself from his co-defendants[11] is misplaced. This argument fails to appreciate the contours of the current challenge lodged by Defendant Hassoun. In his motion, Mr. Padilla argued, *inter alia*, that Hassoun's falsity counts would create a prejudicial spillover that would deny him a fair trial on the conspiracy and material support counts. Specifically, this motion focused on categorically differentiating *Padilla* from the rest of his co-defendants. Padilla focused on his limited participation in the numerous intercepted conversations proffered by the government. Additionally, Padilla placed substantial significance on the prejudicial and inflammatory import of the content of his co-defendants' conversations.

These arguments all focus on the prejudicial effect of the co-defendants' statements on Padilla. Thus, as noted in this Court's Order denying Padilla's Motion to Sever [D.E. 529], the issue at hand with regard to Padilla's motion was the potential for "guilt by association." In fact, this Court specifically delineated that Padilla has not asserted antagonistic defenses in his Motion to Sever, thus obviating the need for severance. On the contrary, this is precisely the argument that Hassoun is propounding in his Motion to Sever. Put plainly, Hassoun is claiming that if the Counts in this case

---

[10] Moreover, the considerably more circumscribed scope of the falsity counts and the substantially more limited preparation and time needed to try these counts, stifles any argument premised upon grounds of judicial economy.

[11] On July 13, 2006, Defendant Jose Padilla moved to sever himself from his co-defendants in his "Motion to Sever and Continue Trial to January 29, 2007" [D.E. 481]. Subsequently, on August 14, 2006, this Court issued an Order denying Padilla's request to sever himself from his co-defendants [D.E. 529].

are tried together, his Fifth Amendment right against self incrimination and his right to provide a complete defense become antagonistic. As noted by this Court in its August 14, 2006 Order, with respect to Padilla's contention, a cautionary jury instruction could cure any potential spillover that could impute statements made by his *co-defendants* to Padilla. However, where a defendant has asserted antagonistic defenses, and the spillover relates to the negative connotations imputed to the defendant by his own statements, a cautionary jury instruction is a far less effective remedy.

Additionally, the government's focus on the preference for joint trials of defendants who are indicted together is similarly misplaced. The government attempts to buttress its argument by correctly observing that this preference is particularly pertinent to conspiracy cases where charges against multiple defendants may be proven with substantially the same evidence. See Zafiro v. United States, 506 U.S. 534, 537 (1993). This Court agrees with the preference for trying conspiracy defendants together for reasons of judicial economy and fairness. However, this Court is not faced with deciding whether to sever a defendant, and try his conspiracy count separately from the conspiracy counts charged against his co-defendants. In fact, in this case, the issue does not even involve severing a defendant at all. Rather, the issue this Court is faced with is severing individual counts that run the risk of creating undue prejudice against a defendant. Thus, the rule in favor of trying defendants together in conspiracy cases is not applicable to this particular motion for severance. The co-defendants will be tried together on the conspiracy counts, the counts that require the jury to consider much of the same evidence. However, with regard to the falsity counts—which charge only Hassoun, and can be tried much more expeditiously than the other counts on a considerably more narrow band of evidence—severance is a far more appropriate remedy.

Finally, the government's contention that Hassoun's motion somehow reflects a desire to "take inconsistent defenses in separate prosecutions," once again misunderstands the nuanced nature

of Defendant Hassoun's argument. Hassoun is not requesting that this Court grant him the right to take inconsistent defenses. Rather, he is arguing that a defense he intends to present for the falsity counts, while wholly consistent with the defense he will be asserting for the conspiracy and material support counts, will unduly pose a significant risk of prejudicial impact on the jurors' consideration of the material support and conspiracy counts. This concern is very valid and justifiable. Likewise, the government citing an Eleventh Circuit holding specifying that a defendant who wishes to testify to one count but not to another does not require severance is similarly inapposite. <u>See</u> Gov. Resp. pp. 16-17 (citing <u>United States v. Corbin</u>, 734 F.2d 643 (11th Cir. 1984), stating that a defendant's desire to testify to one count but not another does not mandate severance) The defendant's argument is not premised on Hassoun's intention to testify to *any counts* in the Indictment. Rather, the "stonewalling" defense may be presented to the jury through other testimony and arguments of counsel. Thus, in this instance Defendant Hassoun has indicated with specificity the defenses he may try to advance at trial and the deleterious effect he could suffer if the counts are tried together in lieu of severance.

Hassoun presents a compelling argument for why Rule 14 severance is appropriate in this case. The government has failed to refute Hassoun's contentions, or provide any persuasive assurance that trying the entirety of the counts together will not result in substantial undue prejudice to defendant Hassoun. Accordingly, severance of the entirety of the Indictment's falsity counts, Counts 5-11, is proper in this case. Since the Court has determined that Rule 14 severance of the falsity Counts is appropriate under <u>Zafiro</u>, it need not conduct the more circumscribed inquiry with regard to whether Count 10 mandates severance under Rule 8.

**IV.**    CONCLUSION

For the reasons set forth above, it is hereby:

**ORDERED and ADJUDGED** that Defendant Hassoun's Motion to Dismiss Counts 5-11, the Falsity Counts filed on October 2, 2006 [D.E. 592] is **DENIED**.

**ORDERED and ADJUDGED** that Defendant Hassoun's Motion to Sever the Falsity Counts (Counts 5-11) filed on October 2, 2006 [D.E. 591] is **GRANTED**.

**DONE and ORDERED** in Chambers at Miami, Florida, this 12th day of March, 2007.

MARCIA G. COOKE
United States District Judge

Copies furnished to:    *All Counsel of Record*